WILLIAM H. DONNER, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 93602.   Promulgated June 13, 1939.

*William H. Foulk, Esq.*, for the petitioner.
*E. G. Smith, Esq.*, for the respondent.

OPINION.

LEECH: This is a proceeding to redetermine a deficiency in income tax of $44,749.47 for the calendar year 1934. It involves the question of the taxability to petitioner of the income of a charitable trust, created by him in 1929, either under sections 166 and 167 of the Revenue Act of 1934, or upon the theory that no valid trust was created by him. The pertinent facts are found pursuant to a stipulation and attached documentary evidence.

On September 26, 1929, petitioner transferred 15,090 shares of the capital stock of the Donner Steel Co. in trust to the Union Trust Co. of Pittsburgh, a corporation located in and organized under the

laws of Pennsylvania. Subsequent transfers to the corpus of the trust were made by him as follows (the first item represents the original transfer as of the date it was converted into cash):

| Date | Securities | Price | Value |
|------|-----------|-------|-------|
| 9/30/29 | 15,090 shares of Donner Steel Co. capital stock | $35 | $528,150 |
| 11/13/29 | 4,700 shares of Donner Steel Co. $6 convertible preference stock | 100 | 470,000 |
| 5/21/30 | 25,000 shares of Wildon, Ltd., capital stock | 80 | 2,000,000 |
| 2/27/32 | Note of W. H. Donner payable 5 years after date, 6% | | 2,000,000 |
| 5/27/32 | $5,000, Donner Steel Co. 5% series "A" bonds | 100 | 5,000 |
| | $117,000, Donner Steel Co. 5% series "AA" bonds | 100 | 117,000 |
| | Total | | 5,120,150 |

Such portions of the trust instrument as are material in this proceeding follow:

To HAVE AND TO HOLD the said money, properties and securities, and the investments and re-investments into which they may hereafter be converted, IN TRUST, NEVERTHELESS, for the following uses and purposes and none other, to-wit:

To invest and re-invest the same from time to time in safe interest-bearing securities or first mortgages upon improved real estate, irrespective of any statutes now or hereafter in force limiting the investments of trustees; and to collect, recover and receive the interest, income and dividends thereon when the same become due and payable, and, after paying thereout the expenses of the management of the trust, including the Trustee's compensation, the net income, together with so much of the corpus cf this fund, shall be paid over to such corporation trust, community chest, fund, foundation or association organized and operated exclusively for religious, charitable, scientific, literary or educational purposes, no part of the net earnings of which inures to the benefit of any private shareholder or individual, as the Donor or the Research Committee appointed by him under the provisions hereof may at any time, and from time to time, determine and direct.

\*        \*        \*        \*        \*        \*        \*

After the decease of the Donor, if he shall have failed to appoint a Research Committee or, having appointed one, both the Donor and all members of the Research Committee shall be deceased, or for any reason refuse or fail to function, the Trustee hereunder shall have unlimited power to determine, from time to time, the portions and amounts of this trust fund and the income therefrom which shall be applied as aforesaid to such uses, objects and purposes.

The Donor reserves the right by proper instrument in writing in his lifetime, or by testamentary appointment after his decease to name a Research Committee consisting of seven (7) individuals who shall meet at such time and place each year as shall be designated by the Donor during his lifetime and after his death as shall be designated by the Research Committee appointed by him for that purpose, and in case of the Donor's failure to appoint such a Committee for the future management of this trust, the Trustee shall have the right to appoint such Committee, not exceeding seven (7) in number, who shall exercise the same powers as might be done if such appointments were made by the Donor, the purpose of this Committee being to offer or award prizes, and to direct the disbursement of the corpus and income of this trust fund in accordance with the intentions of the Donor.

Subject to the approval of the Donor, the Research Committee may use and apply the said income of this trust fund from time to time, or may use any part of the principal thereof, and in case there is no urgent necessity for the application of the income, it may allow the same to accumulate and it may be invested in like securities with the corpus until the time arrives for its use for any one or all of the purposes hereinbefore described and set forth.

The Donor reserves the right, by proper instrument in writing in his lifetime or by testamentary appointment after his decease, to name an Advisory Committee to act with the corporate Trustee, and when so appointed shall have all the powers reserved to the Donor herein, including the right to authorize the sale of securities and the re-investment of the proceeds thereof.

\*　　　　\*　　　　\*　　　　\*　　　　\*　　　　\*　　　　\*

The Donor reserves the right at any time during his lifetime, by proper instrument in writing delivered to the Trustee, to modify, alter or amend the terms of this Agreement by changing the time or manner of payment of the income or corpus, or the manner in which the beneficiaries of this fund shall be selected, but he may not change the general purposes to which this trust and the income therefrom shall be applied so that the same is to be used for any purposes not included in those hereinbefore enumerated, nor shall the Donor have the power to revoke or alter this trust in such manner that any part of the corpus or income shall inure to the benefit of himself or any other private individual or corporation.

On July 28, 1933, petitioner amended the original trust deed and provided for an "Advisory Committee" of from four to seven persons to take the place of the "Research Committee" and "Advisory Committee" originally specified. Its duties and membership were as follows:

\*　　　　\*　　　　\*　　　　\*　　　　\*　　　　\*　　　　\*

(4) The Advisory Committee shall have the right to designate the particular beneficiary or beneficiaries embraced within the classes set forth in the original trust agreement, to which the interest and any portion of the corpus of the trust fund shall be appropriated and paid, and fix the amounts thereof. Provided, however, that no such designation during the lifetime of the Donor shall be valid and effective without the written approval of the Donor. And provided further, that any designation of a particular beneficiary or beneficiaries directed in writing by the Donor to the Trustee in his lifetime or by testamentary disposition after his decease, in whatever amount, whether interest or corpus of the trust fund, shall not be changed, altered or withdrawn by said Advisory Committee, and it shall be the duty of the Trustee to carry out the directions and designations of the Donor in such cases unless revoked by the Donor himself in writing in his lifetime or by testamentary disposition. Any interest or corpus not allocated to particular beneficiaries designated by the Donor, shall be applied and paid as the Advisory Committee shall in writing to the Trustee designate.

\*　　　　\*　　　　\*　　　　\*　　　　\*　　　　\*　　　　\*

(6) Further, I, the said William H. Donner, Donor, do hereby designate, constitute and appoint as said Advisory Committee my wife Dora B. Donner, Robert N. Donner, Elizabeth D. Roosevelt and Dora B. Donner, Jr., they as members of such Advisory Committee to have all the rights, duties, powers and privileges set forth in said original trust agreement and this amendment. I, as Donor, however, reserve the right to fill vacancies and add to the said Committee other members and to change the members from time to time.

In 1934 the trust received $94,414.31 in income, $9,261.40 of which was disbursed to various charities selected by the advisory committee and the remainder, apparently along with additional sums, transferred to principal. None of it went to petitioner or to any private individual or corporation designated by him, except $2,125.98 in trustee's commissions, in accordance with the trust deed.

From time to time, additional donations to charities were made out of corpus; none were made, however, in 1934.

Respondent has sought to tax petitioner on the income of this trust under either of two main heads: First, under sections 166 and 167 of the Revenue Act of 1934, and, second, because (a) it is not a valid, legal, irrevocable trust, (b) it is not operated exclusively for religious, charitable, scientific, literary, and educational purposes, (c) no actual distribution is required, (d) no beneficiary has been named or is subject to selection without the written approval of petitioner; (e) the income of the trust has been allowed to accumulate until the fund has become approximately $3,000,000; (f) only from 10 to 15 percent of the income has been distributed.

Respondent has filed no brief, and, with commendable frankness, his counsel has stated that he can find no support for his positions. We have examined the several contentions advanced in the deficiency letter and the answer, and have come to the same conclusion.

The trust instrument plainly states that the donor shall not have the power to revoke or alter the trust in such a manner that any part of the corpus shall inure to the benefit of himself or any other private individual or corporation. The extent of his power over both corpus and income is to select or approve the selection of the beneficiaries and to pass on the time and manner of payments to them. This power of selection is limited to the general class of objects for the benefit of which the trust was created: "corporation trust, community chest, fund, foundation or association organized and operated exclusively for religious, charitable, scientific, literary or educational purposes, no part of the net earnings of which inures to the benefit of any private shareholder or individual." While income, as to which there might be no pressing need, was to be accumulated, such accumulation could not by any possibility be applied for grantor's benefit. Moreover, the trust was directed to be continued after his death.

Section 166 can not apply, for there is no power to revest the corpus vested in the grantor alone or in conjunction with a person not having a substantial adverse interest or in such a person alone. Section 167 can not apply because the income was not and could not be accumulated for future distribution to the grantor, is not distributable to the grantor, and is not to be applied to policies of insurance upon his life.

The power to select the beneficiaries does not benefit the grantor, nor give him a taxable control over the trust income or corpus, for whatever income or corpus is paid out, must be paid to a charity. In *Phebe Warren McKean Downs*, 36 B. T. A. 1129, we held that the power retained by a grantor to alter the distribution of income among beneficiaries, did not make such income taxable to the grantor where all the income had to be paid, in some way, to beneficiaries other than the grantor. Nor is there any possibility of a resulting trust in this case, for whatever is paid out must be paid out to charities, and whatever remains must be held in trust solely for charitable purposes. Cf. *Fanny M. Dravo*, 34 B. T. A. 190.

*Walker* v. *Commissioner*, 91 Fed. (2d) 297, is distinguishable. There the taxpayer gave $10,000 in trust to be used for such religious or educational purposes as he might direct. The "trustee" was, in fact an agent, functioning under revocable authority. In affirming a memorandum decision of the Board, the court held that since the taxpayer had not parted irrevocably with the $10,000, but had retained control over it, he could not take a charitable deduction for that amount. In the instant case, as has been pointed out, petitioner lacked the power to revest either corpus or income in himself, either by powers of revocation or otherwise. The only benefits he could receive from the trust were the satisfactions of his charitable impulses. As to those he is not to be taxed. Sec. 23 (o), Revenue Act of 1934.

Respondent also pleads that this is not a valid trust, assigning various reasons, some of which are not within the province of the Board. He objects in his answer, for instance, to the fact that the income of the trust has been allowed to accumulate until the fund has reached $3,000,000. There is no basis for this objection unless it be the size or possibly the unlawfulness of the accumulation. If these accumulations are unlawful, that is a matter only for the courts of Pennsylvania. The revenue acts do not provide for taxing them except when made by a corporation for the purpose of avoiding a surtax on its shareholders (see section 102, Revenue Act of 1934), or when they are held for future distribution to the grantor. The latter is not the situation here, as we have already indicated, and the former is not in issue. It may well be true that only 10 to 15 percent of the trust income has been distributed. However, ordinarily, the trustee would report such a fact in its fiduciary return, and presumably that was done here. See sections 142 and 162 (a), Revenue Act of 1934. In any event, that fact is not material here.

The validity of this trust is, of course, governed by the laws of Pennsylvania. *Erie Railroad Co.* v. *Tompkins*, 304 U. S. 64; *A. W. Mellon*, 36 B. T. A. 977. Cf. *Lyeth* v. *Hoey*, 305 U. S. 188. At all times here involved, the following statute was in force in that state:

No disposition of property heretofore or hereafter made for any religious, charitable, literary or scientific use shall fail for want of a trustee, or by reason of the objects being indefinite, uncertain or ceasing, or depending upon the discretion of a last trustee, or being given in perpetuity or in excess of the annual value hereinbefore limited, but it shall be the duty of any orphans' court, or court having equity jurisdiction in the proper county, to supply a trustee, and by its decrees to carry into effect the intent of the donor or testator, so far as the same can be ascertained and carried into effect consistently with law or equity; for which purpose the proceedings shall be instituted by leave of the attorney general of the commonwealth, on the relation of any institution, association, corporation not for profit or individual, desirous of carrying such disposition into effect, and willing to become responsible for the costs thereof, subject to an appeal as in other cases in said courts respectively, and to be reviewed, reversed, affirmed or modified by the supreme court of this state; but if the objects of the trust be not ascertainable, or have ceased to exist, or such disposition be in excess of the annual value permitted by law, or in perpetuity, such disposition, so far as exceeding the power of the courts to determine the same by the rules of law or equity, shall be taken to have been made subject to be further regulated and disposed of by the legislature of this commonwealth, in manner as nearly in conformity with the intent of the donor or testator and the rules of law against perpetuities as practicable, or otherwise to accrue to the public treasury for the public use: Provided, That this act as amended shall not apply to any case which has been adjudicated prior to the adoption of this amendment. (1855, April 26, P. L. 328, § 10; 1895, May 23, P. L. 114, § 1.)

From the literal wording of this statute, it is seen that charitable trusts are valid in Pennsylvania, despite indefiniteness of beneficiaries and that their provisions may be enforced by suits brought with the leave of the attorney general by charities interested in such enforcement. The Pennsylvania courts have often upheld the validity of trusts similar to the one before us. In the case of *In re Thompson's Estate*, 282 Pa. 30; 127 Atl. 446, the highest court of that state held: "The fact that no fixed charity is described, the power of selection having been given by the decedent to another, does not render the trust uncertain, if some tribunal has been designated for the naming of those who shall benefit." Such a tribunal was afforded in the instant proceeding by the "Advisory Committee." *In re Jordan's Estate (Pa.)*, 197 Atl. 150, holding that a provision in a will leaving a part of the estate to "charity" created a valid, enforceable charitable trust, contains this language: "Nor is the gift rendered void because of the testatrix' neglect to specify particular charitable objects." Similar holdings have been made in *Ould* v. *Washington Hospital for Foundlings*, 95 U. S. 303; *Gossett* v. *Swinney*, 53 Fed. (2d) 772; certiorari denied, 286 U. S. 545, which held: "* * * Uncertainty as to the individual beneficiaries is characteristic of a charitable use"; *United States* v. *First National Bank of Birmingham*, 74 Fed. (2d) 360; *A. W. Mellon, supra.* Tested by these authorities, this trust is clearly valid.

Respondent charges in his answer that this trust was not operated exclusively for charitable purposes. This allegation is contradicted

positively by the record. An examination of the trust deed and the trust accounts plainly indicates that the trust was not and could not be operated for any but charitable ends.

As already said, the fact that some of the trust income was allowed to accumulate here is of no concern to the Board. But, in passing, it may be added that accumulations in a charitable trust, which we have here, are entirely lawful in Pennsylvania. The case of *In re Archambault's Estate*, 308 Pa. 549; 162 Atl. 801, holds as follows: "* * * In regard to appellant's argument that the direction to accumulate the income from the trust fund to pay these bequests is in violation of the law against accumulations (Act April 18, 1853, P. L. 503), it is sufficient to say that the statute expressly excludes accumulations for charitable purposes from its operation."

There being no basis upon which to hold the income of the present trust taxable to its grantor,

*Decision will be entered for the petitioner.*