LYETH *v.* HOEY, COLLECTOR OF INTERNAL REVENUE.

No. 48.   Argued November 16, 1938.—Decided December 5, 1938.

*Mr. J. M. Richardson Lyeth,* with whom *Messrs. Will R. Gregg* and *Allin H. Pierce* were on the brief, for petitioner.

*Assistant Attorney General Morris,* with whom *Solicitor General Jackson,* and *Mr. Sewall Key, Mr. J. Louis Monarch,* and *Helen R. Carloss* were on the brief, for respondent.

MR. CHIEF JUSTICE HUGHES delivered the opinion of the Court.

The question presented is whether property received by petitioner from the estate of a decedent in compromise of his claim as an heir is taxable as income under the Revenue Act of 1932.

Petitioner is a grandson of Mary B. Longyear who died in 1931, a resident of Massachusetts, leaving as her heirs four surviving children and the petitioner and his brother, who were sons of a deceased daughter. By her will, the decedent gave to her heirs certain small legacies and the entire residuary estate, amounting to more than $3,000,-000, was bequeathed to trustees of a so-called Endowment Trust, created April 5, 1926, the income from which was payable to another set of trustees under another trust described as the Longyear Foundation. The main purpose of the latter trust was to preserve "the records of the earthly life of Mary Baker Eddy," the founder of the Christian Science religion.

When the will was offered for probate in Massachusetts there was objection by the heirs upon the grounds, among others, of lack of testamentary capacity and undue influence. After hearing, at which a statement was made by the respective parties of their proposed evidence, the probate court granted a motion for the framing of issues for trial before a jury. In that situation a compromise agreement was entered into between the heirs, the legatees, the devisees and the executors under the will, and the Attorney General of Massachusetts. This agreement provided that the will should be admitted to probate and letters testamentary issued; that the specific and

pecuniary bequests to individuals should be enforced; that the bequest of the residuary estate to the Endowment Trust should be disregarded; that $200,000 should be paid to the heirs and a like amount to the Endowment Trust, and that the net residue of the estate, as defined, should be equally divided between the trustees of the Endowment Trust and the heirs. The net residue to which the heirs were thus entitled was to be payable in units of stock owned by the decedent in certain corporations, Longyear Estate, Inc., Longyear Corporation and Longyear Realty Corporation, and for that purpose a unit was to consist of three shares, one share of each corporation.

The compromise was approved by the probate court pursuant to a statute of Massachusetts (Mass. Gen. Laws 1932, c. 204, §§ 15–17) and a decree was entered on April 26, 1932, admitting the will to probate, issuing letters testamentary to the executors and directing them "to administer the estate of said deceased in accordance with the terms of said will and said agreement of compromise." Owing to the Depression and the necessity of discharging pecuniary legacies amounting to about $300,000, which were entitled to priority in payment before distribution of the residue, the heirs undertook to finance one-half of these legacies and the residuary legatees the other one-half. For this purpose the heirs formed a corporation known as Longyear Heirs, Inc., to which they assigned their interests in the estate in exchange for common stock. Preferred stock was issued to the pecuniary legatees.

In July, 1933, the executors distributed to Longyear Heirs, Inc., as assignee of the petitioner, his distributable share of the estate consisting of $80.17 in cash and a certificate of deposit for 358 units, each unit representing one share of each of the three corporations mentioned in the compromise agreement. The Commissioner of Internal Revenue valued this distributable share at $141,484.03

and treated the whole amount as income for the year 1933 in which it was received. An additional tax of $56,-389.65 was assessed, which petitioner paid in October, 1936, with interest. Claim for refund was then filed and on its rejection this suit was brought against the collector.

On motion of petitioner the District Court entered a summary judgment in his favor, 20 F. Supp. 619, which the Circuit Court of Appeals reversed. 96 F. 2d 141. Because of a conflict with the decision of the Circuit Court of Appeals of the Fourth Circuit in *Magruder* v. *Segebade,* 94 F. 2d 177, certiorari was granted.

The Court of Appeals overruled the contentions of petitioner that the property he received was within the statutory exemption (§ 22 (b) (3) of the Revenue Act of 1932) and, further, that the property was not income either under the statute or under the Sixteenth Amendment of the Federal Constitution. As the view of the Court of Appeals upon these questions determined the rights of the parties, it was found unnecessary to discuss certain affirmative defenses set up by the answer of the respondent and these defenses are not pressed in this court.

*First.* By § 22 (b) (3) of the Revenue Act of 1932, there is exempted from the income tax—

"The value of property acquired by gift, bequest, devise, or inheritance. . . ."

Whether property received by an heir from the estate of his ancestor is acquired by inheritance, when it is distributed under an agreement settling a contest by the heir 'of the validity of the decedent's will, is a question upon which state courts have differed. The question has arisen in the application of state laws of taxation. In Massachusetts, the rule is that when a will is admitted to probate under a compromise agreement, the state succession tax is applied to the property "that passes by the terms of the will as written and not as changed by

any agreement for compromise." *Baxter* v. *Treasurer,* 209 Mass. 459, 463; 95 N. E. 854, 856. Although under the Massachusetts statute relating to compromise [1] it is the practice to insert a clause in the court's decree that the estate is to be administered in accordance with the agreement, "yet the rights of the parties so far as they rest upon the agreement are contractual and not testamentary." *Ellis* v. *Hunt,* 228 Mass. 39, 43; 116 N. E. 956. See, also, *Brandeis* v. *Atkins,* 204 Mass. 471, 474; 90 N. E. 861; *Copeland* v. *Wheelwright,* 230 Mass. 131, 136; 119 N. E. 667. Thus, when a contest was withdrawn under a compromise and the residuary estate was divided equally between the legatee and the heirs, it was held that the tax was properly levied upon the entire residuary legacy and that the administrators with the will annexed had no right to pay out of the share transferred to the heirs one-half of the tax thus collectible from the legatee unless the compromise agreement expressly or impliedly so provided. *Brown* v. *McLoughlin,* 287 Mass. 15, 17; 190 N. E. 795. Several States have a similar rule.[2] In other States the amount received by an heir under an agreement compromising a contest of his ancestor's will is considered to be received by virtue of his heirship and is subject to an inheritance tax unless the statute exempts him.[3]

---

[1] Massachusetts General Laws 1932, Chap. 204, §§ 13–18.

[2] See *Matter of Cook,* 187 N. Y. 253; 79 N. E. 991; *English* v. *Crenshaw,* 120 Tenn. 531; 110 S. W. 210; *Estate of Wells,* 142 Iowa 255; 120 N. W. 713; *Estate of Graves,* 242 Ill. 212; 89 N. E. 978; *Estate of Rossi,* 169 Cal. 148; 146 P. 430; *Cochran's Executor* v. *Commonwealth,* 241 Ky. 656; 44 S. W. 2d 603; *MacKenzie* v. *Wright,* 31 Ariz. 272; 252 P. 521; *In re O'Neill,* 111 N. J. Eq. 378; 162 A. 425; *Lynchburg Bank* v. *Commonwealth,* 162 Va. 73; 173 S. E. 548.

[3] See *Pepper's Estate,* 159 Pa. 508; 28 A. 353; *Taber's Estate,* 257 Pa. 81; 101 A. 311; *Taylor* v. *Georgia,* 40 Ga. App. 295; 149 S. E. 321; *People* v. *Rice,* 40 Colo. 508; 91 P. 33; *State ex rel. Hilton* v. *Probate Court,* 143 Minn. 77; 172 N. W. 902; *Estate of Thorson,*

In the instant case, the Court of Appeals applied the Massachusetts rule, holding that whether the property was received by way of inheritance depended "upon the law of the jurisdiction under which this taxpayer received it." We think that this ruling was erroneous. The question as to the construction of the exemption in the federal statute is not determined by local law. We are not concerned with the peculiarities and special incidences of state taxes or with the policies they reflect. Undoubtedly the state law determines what persons are qualified to inherit property within the jurisdiction. *Mager* v. *Grima,* 8 How. 490, 493; *Maxwell* v. *Bugbee,* 250 U. S. 525, 536, 537. The local law determines the right to make a testamentary disposition of such property and the conditions essential to the validity of wills, and the state courts settle their construction. *Uterhart* v. *United States,* 240 U. S. 598, 603. The State establishes the procedure governing the probate of wills and the processes of administration. Petitioner's status as heir was thus determined by the law of Massachusetts. That law also regulated the procedure by which his rights as an heir could be vindicated. The state law authorized its courts to supervise the making of agreements compromising contests by heirs of the validity of an alleged will of their ancestor, in order that such compromises shall be just and reasonable with respect to all persons in interest.[4] But when the contestant is an heir and a valid compromise agreement has been made and there is a distribution to the heir from the decedent's estate accordingly, the question whether what the heir has thus received has been "acquired by inheritance" within the meaning of the federal statute necessarily is a federal question. It is not determined by local characterization.

---

150 Minn. 464; 185 N. W. 508. Compare *Barber* v. *Westcott,* 21 R. I. 355; 43 A. 844.

[4] See Note 1. Such agreements are "entirely valid outside of the statute." *Ellis* v. *Hunt,* 228 Mass. 39, 44; 116 N. E. 956.

In dealing with the meaning and application of an act of Congress enacted in the exercise of its plenary power under the Constitution to tax income and to grant exemptions from that tax, it is the will of Congress which controls, and the expression of its will, in the absence of language evidencing a different purpose, should be interpreted "so as to give a uniform application to a nationwide scheme of taxation." *Burnet* v. *Harmel*, 287 U. S. 103, 110. Congress establishes its own criteria and the state law may control only when the federal taxing act by express language or necessary implication makes its operation dependent upon state law. *Burnet* v. *Harmel, supra.* See *Burk-Waggoner Oil Assn.* v. *Hopkins,* 269 U. S. 110, 111, 114; *Weiss* v. *Wiener,* 279 U. S. 333, 337; *Morrissey* v. *Commissioner,* 296 U. S. 344, 356. Compare *Crooks* v. *Harrelson,* 282 U. S. 55, 59; *Poe* v. *Seaborn,* 282 U. S. 101, 109, 110; *Blair* v. *Commissioner,* 300 U. S. 5, 9, 10. There is no such expression or necessary implication in this instance. Whether what an heir receives from the estate of his ancestor through the compromise of his contest of his ancestor's will should be regarded as within the exemption from the federal tax should not be decided in one way in the case of an heir in Pennsylvania or Minnesota and in another way in the case of an heir in Massachusetts or New York,[5] according to the differing views of the state courts. We think that it was the intention of Congress in establishing this exemption to provide a uniform rule.

*Second.* In exempting from the income tax the value of property acquired by "bequest, devise, or inheritance," Congress used comprehensive terms embracing all acquisitions in the devolution of a decedent's estate. For the word "descent," as used in the earlier acts,[6] Congress sub-

[5] See Notes 2 and 3.

[6] See Act of October 3, 1913, c. 16, § II, 38 Stat. 167; Revenue Acts of 1918, 1921 and 1924, § 213 (b) (3).

stituted the word "inheritance" in the 1926 Act and the subsequent revenue acts as "more appropriately including both real and personal property." [7] Thus the acquisition by succession to a decedent's estate whether real or personal was embraced in the exemption. Further, by the "estate tax," Congress has imposed a tax upon the transfer of the entire net estate of every person dying after September 8, 1916,[8] allowing such exemptions as it sees fit in arriving at the net estate. Congress has not indicated any intention to tax again the value of the property which legatees, devisees or heirs receive from the decedent's estate.

Petitioner was concededly an heir of his grandmother under the Massachusetts statute. It was by virtue of that heirship that he opposed probate of her alleged will which constituted an obstacle to the enforcement of his right. Save as heir he had no standing. Seeking to remove that obstacle, he asserted that the will was invalid because of want of testamentary capacity and undue influence. In accordance with local practice, he asked the probate court to frame these issues for a jury trial. It then became necessary for him to satisfy the court that the issues were substantial. Issues are not to be framed unless it appears from statements by counsel of expected evidence or otherwise that there is a "genuine question of fact supported by evidence of such a substantial nature as to afford ground for reasonable expectation of a result favorable to the party requesting the framing of issues." *Briggs* v. *Weston,* — Mass. —; 2 N. E. 2d 466; *Smith* v. *Patterson,* 286 Mass. 356; 190 N. E. 536. Petitioner satisfied that condition and the probate court directed the framing of jury issues. It was in that situation, facing a trial of the issue of the validity of the will, that the

[7] Revenue Act of 1926, § 213 (b) (3); Acts of 1928 and 1932, § 22 (b) (3). Sen. Rep. No. 52, 69th Cong., 1st Sess., p. 20.

[8] Act of September 8, 1916, c. 463, Title II, 39 Stat. 777.

compromise was made by which the heirs, including the petitioner, were to receive certain portions of the decedent's estate.

There is no question that petitioner obtained that portion, upon the value of which he is sought to be taxed, because of his standing as an heir and of his claim in that capacity. It does not seem to be questioned that if the contest had been fought to a finish and petitioner had succeeded, the property which he would have received would have been exempt under the federal act. Nor is it questioned that if in any appropriate proceeding, instituted by him as heir, he had recovered judgment for a part of the estate, that part would have been acquired by inheritance within the meaning of the act. We think that the distinction sought to be made between acquisition through such a judgment and acquisition by a compromise agreement in lieu of such a judgment is too formal to be sound, as it disregards the substance of the statutory exemption. It does so, because it disregards the heirship which underlay the compromise, the status which commanded that agreement and was recognized by it. While the will was admitted to probate, the decree also required the distribution of the estate in accordance with the compromise and, so far as the latter provided for distribution to the heirs, it overrode the will. So far as the will became effective under the agreement it was because of the heirs' consent and release and in consideration of the distribution they received by reason of their being heirs. Respondent agrees that the word "inheritance" as used in the federal statute is not solely applicable to cases of complete intestacy. The portion of the decedent's property which petitioner obtained under the compromise did not come to him through the testator's will. That portion he obtained because of his heirship and to that extent he took in spite of the will and as in case of intestacy. The fact that petitioner received less than

the amount of his claim did not alter its nature or the quality of its recognition through the distribution which he did receive.

We are not convinced by the argument that petitioner had but "the expectations" of an heir and realized on a "bargaining position." He was heir in fact. Whether he would receive any property in that capacity depended upon the validity of his ancestor's will and the extent to which it would dispose of his ancestor's estate. When, by compromise and the decree enforcing it, that disposition was limited, what he got from the estate came to him because he was heir, the compromise serving to remove *pro tanto* the impediment to his inheritance. We are of the opinion that the exemption applies.

In this view we find it unnecessary to consider the other questions that have been discussed at the bar.

The judgment of the Circuit Court of Appeals is reversed and that of the District Court is affirmed.

*Reversed.*