122 F.2d 480 (1941)
In re SAGE'S ESTATE.
SAGE et al.
v.
COMMISSIONER OF INTERNAL REVENUE.
No. 7708.
Circuit Court of Appeals, Third Circuit.
June 27, 1941.
*481 T. Girard Wharton, of Somerville, N. J. (Thomas A. S. Beattie, of New York City, Frederick W. Hall, of Newark N. J., and Joseph Halpern, of Somerville, N. J., on the brief), for petitioners.
Louise Foster, Sp. Asst. to Atty. Gen. (Samuel O. Clark, Jr., Asst. Atty. Gen., and Sewall Key, Sp. Asst. to the Atty. Gen., on the brief), for respondent.
Before CLARK, JONES, and GOODRICH, Circuit Judges.
JONES, Circuit Judge.
In determining the net amount of a testator's estate subject to tax, is a charitable bequest of the residuary estate deductible in the amount available for distribution to the legatee or in that amount less a sum paid by the legatee to the decedent's widow, under a compromise agreement, to procure her abandonment of a contest of the testator's will?
The facts in the case were stipulated before the Board of Tax Appeals. John Sage, a resident of Bergen County, New Jersey, died testate on October 11, 1936, leaving to survive him his widow, who was adjudged incompetent two months later and for whom guardians were appointed by the Orphans' Court of Bergen County on December 22, 1936. The guardianship endured throughout the time involved in the present matter. The testator left a gross estate of approximately $450,000. By his will he bequeathed to his widow his household effects and legacies aggregating $42,000. After other specific and pecuniary legacies, he bequeathed his converted residuary estate to the Lord Provost of Glasgow, Scotland, outright, and added a request that the Lord Provost "distribute same among such institutions in Scotland, as are devoted to the care and maintenance of the blind, maimed and disabled soldiers and sailors of the British Army and Navy according to his best judgment and discretion."
The will was first offered for probate before the Surrogate for the County of New York, State of New York, on December 7, 1936. On January 12, 1937, the guardians of the widow, who had been appointed in the meantime, filed answer in the nature of a caveat and prayed that probate be denied the will and that it be declared null and void. Consequent upon the contest proceeding, the Surrogate in New York directed that the will be transmitted to the Surrogate of Bergen County, New Jersey, and thereupon dismissed all proceedings in the New York Surrogate's Court looking to the probate of the will. The will was then (April 9, 1937) filed for probate in the office of the Surrogate for Bergen County, New Jersey, and a petition for its probate was duly filed in the surrogate's court. Citations, returnable May 19, 1937, issued on the petition for probate. It was in that situation that the guardians of the widow and the Lord Provost, acting by local attorney-in-fact, entered into a written agreement of compromise on May 8, 1937, whereby the guardians agreed "to withdraw all objection to the probate of the instrument * * as the Last Will and Testament of said John Sage, deceased" and consented "to the probate thereof * * *", the Lord Provost agreeing to pay to the guardians of the widow "a sum equivalent to twenty-five (25%) percent of the gross amount payable to the Lord Provost * * * as residuary legatee of the Estate of John Sage, deceased, pursuant to * * * said Will." On May 17, 1937, the guardians of the widow petitioned the Orphans' Court of Bergen County, setting forth the material facts as to Sage's death, his will and the attempts *482 to probate it, the objections thereto and the agreement of compromise between the guardians and the Lord Provost. The petition prayed the court's approval of the compromise agreement, which the court, by formal order of May 19, 1937, did approve. On the same day, the will was admitted to probate by the Surrogate for Bergen County. The executors named in the will thereupon qualified and entered upon the administration of the estate. On December 1, 1937, the executors filed their final account in the Orphans' Court of Bergen County and on January 11, 1938, the court entered a decree allowing and settling the account. The account showed a balance for distribution of $175,750.48 after the payment of debts, specific and general legacies and allowances, and the payment of all commissions, counsel fees and other administration expenses and disbursements. Thereafter the executors petitioned the Orphans' Court for a decree of distribution, which was entered by the court on February 9, 1938. The decree awarded and distributed the entire balance on hand to the Lord Provost as residuary legatee.
The executors were not parties to the compromise agreement nor was it incorporated in or made a part of the probate proceedings. Neither the decree settling the executors' account nor the decree of distribution provided for any payments to the widow or her guardians. (Her specific and pecuniary legacies had been paid by the executors prior to the filing of their account.) If these matters be material, it should also be noted, in passing, that the decree of distribution, as well as the decree settling the executors' account, was entered by the same court acting by the same judge as had approved the compromise agreement prior to and as a part of the withdrawal of the objections to the will and the probate thereof.
On March 30, 1938, the attorney-in-fact for the Lord Provost, pursuant to the terms and conditions of the compromise agreement, paid the sum of $38,682.62 to the widow's guardians and at the time of the stipulation before the Board of Tax Appeals, the attorney-in-fact had in his possession the further sum of $5,000 to be paid to the widow's guardians.
On December 20, 1937, the executors filed an estate tax return in which a deduction from the testator's gross estate was claimed for the full amount of the residuary estate as a charitable and public trust. On January 5, 1939, the Commissioner of Internal Revenue determined a deficiency in tax, having disallowed one-fourth of the deduction claimed for the residuary bequest on the ground that, under the terms of the compromise agreement, the amount paid the widow by the Lord Provost passed to her as the widow of the testator in settlement of her contest of the testator's will and that, in no event, could the payment to the widow be considered part of a charitable bequest entitled to freedom from the estate tax. The State of New Jersey had previously assessed the decedent's estate for transfer inheritance tax purposes on the basis that the entire residuary estate was a charitable and public bequest.
The applicable statutory provision in Section 303(a) (3) of the Revenue Act of 1926, c. 27, 44 Stat. 9, as amended, 26 U.S.C.A. Int.Rev.Acts, pages 232 and 235 et seq. The Commissioner concedes the testator's bequest was to a charitable use. It is only the amount which may be deducted in determining the testator's net estate subject to tax that is in dispute here.
We think that the Board was right in approving the Commissioner's assessment. What the widow received as a result of the compromise agreement she took because of her standing, as the testator's widow, to contest the will and, if successful, so deprive the residuary legatee of the bequest. The principle involved was ruled by the Supreme Court in Lyeth v. Hoey, 305 U.S. 188, 59 S.Ct. 155, 156, 83 L.Ed. 119, 119 A.L.R. 410. There, an heir contested the will of his deceased grandmother. The contest resulted in a settlement whereby the heir received a considerable portion of the estate otherwise bequeathed by the will which, consequent upon the settlement and in effectuation thereof, was admitted to probate. The question involved, as stated by the Supreme Court, was "whether property received by petitioner [grandson] from the estate of a decedent in compromise of his claim as an heir is taxable as income under the Revenue Act of 1932." The Commissioner had assessed against the heir, as income, the amount received by him under the settlement. It was the heir's contention that what he had received in the settlement represented property acquired by "inheritance" within the meaning of Section 22(b) (3) of the Revenue Act of 1932, 26 U.S.C.A. Int.Rev.Acts, pages 487, 488, which exempts the value of such property from income tax. The Supreme Court *483 sustained the heir's contention, and in so doing, said, 305 U.S. at page 196, 59 S.Ct. at page 159,  "There is no question that petitioner obtained that portion, upon the value of which he is sought to be taxed, because of his standing as an heir and of his claim in that capacity. It does not seem to be questioned that if the contest had been fought to a finish and petitioner had succeeded, the property which he would have received would have been exempt under the federal act. Nor is it questioned that if in any appropriate proceeding, instituted by him as heir, he had recovered judgment for a part of the estate, that part would have been acquired by inheritance within the meaning of the act. We think that the distinction sought to be made between acquisition through such a judgment and acquisition by a compromise agreement in lieu of such a judgment is too formal to be sound, as it disregards the substance of the statutory exemption. It does so, because it disregards the heirship which underlay the compromise, the status which commanded that agreement and was recognized by it." (Emphasis supplied.)
It does not seem possible to distinguish the Lyeth case from the present, in principle. But, the petitioner points to the fact that the Lyeth case involved a question of income, and not estate, tax liability. That is hardly more than a difference in words. Certainly, it is not a distinction material to the rationale of the rule involved. In each instance, the word "inheritance" describes, for purposes of tax attachment, a mode of acquisition common to both cases. Petitioner also points out that, in the Lyeth case, the compromise agreement was made a part of the probate proceedings, while here it was not. The answer to that is that the probate proceeding was patently immaterial to the question involved. The heir in the Lyeth case did not take under the testator's will (except for a small bequest not material to the subject matter of the compromise agreement). Like the widow here, he took in spite of the will and not because of it. It is equally certain that he did not take under the intestate law. As here, there was no intestacy. Yet, he took by "inheritance". And, what he received he took because of his standing as heir,  "the status which commanded that [compromise] agreement and was recognized by it." Precisely the same thing may be said here. Consequently, what the widow received in settlement of the will contest, she took by "inheritance" within the meaning of the Revenue Acts. Cf. Chase National Bank et al. v. Commissioner, 40 B.T.A. 44, 46.
The case of Robbins v. Commissioner, 1 Cir., 111 F.2d 828, 830, upon which the petitioner so largely relies, is not in point. There, Amherst College, a legatee in remainder in an amount which might range from one cent to $250,000, obtained written assurance, as the result of a compromise agreement settling a contest of the will, that it would receive in remainder after the death of the life tenants $250,000, or one-third of the corpus of the trust, whichever was the lesser. Deduction of the amount thus allocated to Amherst was disallowed, in determining the testator's estate subject to tax, on the ground that Amherst took by purchase and not by "inheritance". The petitioner argues that the widow in the instant case stands in the same position as did Amherst College in the Robbins case, and that she took by purchase from the Lord Provost and not by "inheritance" from the testator. This argument plainly ignores the difference in standing between the widow and Amherst College with respect to the right to contest the wills of the respective decedents. The widow, having such a right (which, incidentally, was being exercised), had the status to command the compromise agreement by which she benefited from the distribution of her deceased husband's estate, contrary to the provisions of his will. Amherst College had no such status. It was a volunteer and lacked standing to contest. In fact, had intestacy been established in the Robbins case, Amherst's right as a legatee would have vanished. Amherst could take by "inheritance" from the decedent only by virtue of his will, but that it did not do under the compromise agreement. And even had Amherst taken pursuant to the decedent's will, it might have received next to nothing, depending upon whether and how the life tenant named in the will exercised her power of appointment. An heir (another daughter of the testator) contested the will in the Robbins case, thus threatening intestacy. In that situation Amherst participated in a settlement of the contest and made a good bargain, but it was still a bargain and not an "inheritance". The Robbins case demonstrates, moreover, the immateriality of the fact that the compromise agreement settling the will contest was made a part of the probate proceedings,  the fact in the Lyeth case which the petitioner stresses as distinguishing that case *484 from the present. In the Robbins case the decree of the Probate Court, which admitted the will to probate (after the settlement of the contest and as a result thereof), directed that the executors administer the estate "in accordance with the terms of said will and said agreement of compromise". And so, what Amherst received was not an "inheritance", while what the heir in the Lyeth case took was an "inheritance". Yet, the compromise agreement was a part of the probate proceeding in each instance. This seeming conflict is no conflict at all, however, once it is recognized that the point of material difference is that the heir in the Lyeth case, like the widow in the present case, had the status which commanded the compromise agreement,  a status which Amherst did not have.
So far, we have considered the disallowance, pro tanto, of the deduction for charity in this case on the basis that one-fourth of the residuary estate went to the widow as an "inheritance" from her deceased husband. But, we think the Board's decision is justified for another reason.
It was the probate of the will which legally fixed the Lord Provost's right to participate as a distributee of the testator's estate; and the probate depended upon the compromise agreement. What the Lord Provost thus received for charitable use was not the whole of the residuary estate but only three-fourths of it. The latter amount must therefore measure the quantum of the deduction allowable. In Heim, Executor, etc., et al. v. Nee, Collector, D.C.W.D.Mo., 40 F.Supp. 594, 19 A. F.T.R. 1318, 1319, 1937 C.C.H.Vol. 4, par. 9371, it was said that "The amount to be deducted for testamentary charitable gifts must be computed on the basis of what the charities actually received, not on the basis of what is provided in the will of the decedent." That is what the statute plainly intends. Section 303(a) (3) allows deduction from a gross estate for "The amount of all bequests, legacies, devises, or transfers, * * * to a trustee * * *, but only if such contributions or gifts are to be used by such trustee * * * exclusively for religious, charitable, scientific, literary, or educational purposes * * *."[1] (Emphasis supplied.) The Lord Provost was a trustee for the charitable use contemplated by the testator.[2] The amount deductible could not, therefore, exceed the sum which the Lord Provost used exclusively for charitable purposes. Obviously, he could not so use what he did not actually receive. And as a result of the compromise agreement, he received, for the charitable uses contemplated by the testator, only three-fourths of the residuary estate, while the remaining one-fourth went to a use not charitable.
By way of answer, petitioner asserts that "Congress intended that the tax should be determined as of the date of the testator's death and upon the conditions and circumstances existing at that time." Undeniably, the estate subject to tax is the property which passes from a decedent at death. The estate tax is a tax on the transmission and not on the succession. Knowlton v. Moore, 178 U.S. 41, 48, 49, 20 S.Ct. 747, 44 L.Ed. 969. The decedent's gross estate is therefore to be determined as of the date of his death. Ithaca Trust Co. v. United States, 279 U.S. 151, 155, 49 S.Ct. 291, 73 L.Ed. 647. But, while a decedent's gross estate is fixed as of the date of his death, deductions claimed in determining the net estate subject to tax may not be ascertainable or even accrue until the happening of events subsequent to death. Such is the case with respect to administration expenses, which are of course an allowable deduction. It is also true with respect to deductions for conditional charitable bequests which cannot be measured until the happening of some subsequent event, or in cases where bequests to charity are in whole or in part diverted to a use for which the bequest would not be deductible had it been directly so bequeathed by the *485 decedent. This precise situation is provided for by Treasury regulation[3] which appropriately effectuates the administration of the cognate statutory provision. The regulation is peculiarly pertinent to the facts in the instant case. The Board of Tax Appeals properly sustained the deficiency assessment.
The decision of the Board of Tax Appeals is affirmed.
NOTES
[1] The condition in Section 303 (a) (3) with respect to deductions for bequests and legacies to "a trustee or trustees" does not relate to a bequest or legacy to a "corporation organized and operated exclusively for religious, charitable, scientific, literary, or educational purposes", etc. Presumably, Congress felt that the visitorial power of a corporation's creator to compel obedience to charter powers is sufficient safeguard to insure that the gifts received by such corporations would be used "exclusively for religious, charitable, scientific, literary, or educational purposes", etc.
[2] The bequest to the Lord Provost was an outright gift, and the testator's request that it be distributed by the legatee among charitable institutions was hardly more than precatory. But, for the purposes of this case, the Lord Provost must be deemed to be a trustee for a charitable use. Otherwise, there could be no claim to a deduction for a charitable bequest.
[3] Art. 47 of Treasury Regulations 80, 1934 Ed. provides as follows:

"Art. 47. Conditional bequests.  If the transfer is dependent upon the performance of some act or the happening of some event in order to become effective, it is necessary that the performance of the act or the occurrence of the event shall have taken place before the deduction can be allowed.
"If the legatee, devisee, donee, or trustee is empowered to divert the property or fund, in whole or in part, to a use or purpose which would have rendered it, to the extent that it is subject to such power, not deductible had it been directly so bequeathed, devised, or given by the decedent, deduction will be limited to that portion, if any, of the property or fund which is exempt from an exercise of such power."