The Investors' Mortgage Security Company, Limited v. Commissioner.
Investors' Mortg. Sec. Co. v. Commissioner
Docket No. 2278.
United States Tax Court
1945 Tax Ct. Memo LEXIS 343; 4 T.C.M. (CCH) 45; T.C.M. (RIA) 45022; January 17, 1945
*343 Marion N. Fisher, Esq., 15 Broad St., New York, N. Y., for the petitioner. Lester M. Ponder, Esq., for the respondent. STERNHAGEN The Commissioner determined deficiencies of $2,542.31, $1,687.65, $978.17 and $704.04 in income tax for the fiscal years ending September 30, 1937, 1938, 1939 and 1941. The petitioner assails the determination that it is taxable as a nonresident foreign corporation under Section 231(a) of the Revenue Acts of 1936 and 1938, and Internal Revenue Code, and contends that it was engaged in trade or business within the United States. Findings of Fact The petitioner was incorporated in 1891 under the laws of Great Britain. Its principal office is Edinburgh, Scotland. The objects for which it was organized are, inter alia, as follows: "(a) To carry on the business of an Investment, or Lending, or Mortgage, or Trust, or Agency Company, or to undertake or do either, as principal, trustee, or agent, for any person or persons, any loaning or financial or other business, or to do all or any of these things. "(b) The lending or investing of money as principal, or trustee, or agent, upon the security of or over any lands, hereditaments, or real *344 property of any description, or tenure, or any interest therein situated in any part of the world, or on the security of any mortgages or other liens or burdens on real estate, and the purchasing or otherwise acquiring, holding, owning, selling, or otherwise disposing of any such mortgages or other liens, or without any guarantee or collateral obligation by this Company. "(c) The lending money upon and taking security upon, or purchasing, or otherwise acquiring, owning, and holding as principal, or trustee, or agent, warehouse, or other receipts, certificates, or warrants, bills of lading, or the contents thereof, or any crops, produce, stocking, bullion, fungibles, effects, chattels, moveables, or personal property of any kind, and pledging, selling, or otherwise disposing of the same. "(d) The foreclosing, purchasing, leasing, or otherwise acquiring, holding, using, improving, and managing, and selling, leasing, or otherwise disposing of any real property and any interest therein, of any and every description and tenure, situated in any part of the world, and that either as principal, or trustee, or agent for any person or persons." * * *
The income for years ended September *345 30 from sources within and the investments in the United States of petitioner were as follows: 1937
1938
Amount
Income
Amount
Income
Invested
or Loss
Invested
or Loss
Class of Investment of Income
Bonds and shares
$4,024,587.48
$4,076,116.95
Dividends and interest
$256,044.98
$205,168.67
Losses on sale of stocks and bonds
1,485.09
46,759.18
Mortgages
168,364.69
126,281.94
Interest on mortgages
9,099.00
8,104.97
Losses on sales of mortgages
2,769.79
15,981.35
Real estate
511,269.75
484,247.40
Rentals - net
4,829.81
2,416.11
Losses on sales of real estate
14,147.79
10,144.88
Cash
11,017.81
1939
1941
Amount
Income
Amount
Income
Invested
or Loss
Invested
or Loss
Bonds and shares
$3,729,080.75
$ 717,721.12
Dividends and interest
$169,380.87
$ 59,840.84
Losses on sale of stock
123,874.72
Mortgages
125,848.39
129,128.90
Interest on mortgages
6,296.58
4,790.59
Real estate
442,781.21
423,820.91
Rentals - net
(830.12)
500.87
Cash
12,146.01
17,441.86
Petitioner's holdings of stocks and bonds in United *346 States corporations were registered in the name of a company incorporated in Great Britain. Taxes were withheld at the source and paid over to the Collector of Internal Revenue by the corporations paying the income therefrom. Petitioner filed claims for refunds therefor as follows: Year Ending Sept. 30, 1937
$25,438.04
Filed Feb. 15, 1938
Year Ending Sept. 30, 1938
20,455.26
Filed May 8, 1939
Year Ending Sept. 30, 1939
16,882.38
Filed Sept. 6, 1940
Year Ending Sept. 30, 1941
9,502.17
Filed Sept. 19, 1942
During the years in question petitioner was licensed and qualified to do business as a foreign corporation in the States of Washington, Oregon, Idaho, Oklahoma and Texas. On October 1, 1936, petitioner owned 49 pieces of real estate located in about 16 counties in the States of Washington, Oregon and Idaho, of which 48 were farms and ranches containing 10,122.92 acres and one was city property. On September 30, 1941, it owned in such states 34 pieces of real estate, of which 33 were farms containing 7,484.89 acres, and one was city property. On September 30, 1937, petitioner owned 46 pieces of real estate in the States of Oklahoma and Texas, of which *347 44 were farms and ranches. On June 30, 1941, it owned 27 pieces of real estate in such states. In addition, on September 30, 1937, it owned a 3/10 undivided interest in 2,380 acres in Duval County, Texas, a 3/10 undivided interest in 289 acres in Brooks County, Texas, a 17/33 undivided interest in 8,516 acres in Leon County, Texas, and a 5/9 undivided interest in 3,286 acres in Madison County, Texas, of which all except the 17/33 interest were sold during the period from May 20, 1937, to and including 1941. The gross rentals from such properties were: Fiscal year 1937
$17,715.24
Fiscal year 1938
17,291.18
Fiscal year 1939
20,006.89
Fiscal year 1941
15,056.56
On all the above properties petitioner had held notes secured by mortgages, and the properties were acquired by foreclosure or by voluntary conveyance of the mortgagor. Most of them were acquired shortly after World War I and prior to 1930. The properties were operated for petitioner by agents or attorneys-in-fact who were located in Portland, Oregon, Dallas, Texas, and San Antonio. Texas. They were engaged in business as real estate, insurance, and loan, brokers, and financial agents. Most of the properties *348 were rented under lease executed in the name of petitioner by its attorney-in-fact. Most of the leases in Idaho, Washington and Oregon, were on the crop share basis. The agent collected the rent in crops and disposed of the crops. Insurance on all improvements was carried in the name of petitioner. The properties were rented for farming and grazing purposes and in some instances for the exploration of oil and gas. The rents were collected by the agents, and they made periodical inspections of the properties and attended to repairs and all other matters necessary for proper management and maintenance. Whenever an attractive offer of purchase was received by any of the agents, it was submitted with a recommendation to petitioner in Edinburgh for its approval and acceptance. This procedure was voluntarily adopted by the agents. Each agent kept separate books of account showing revenues and disbursements of property handled by him. The agent in Portland received payments from the Department of Agriculture for soil conservation on the properties in his care. The checks were payable to petitioner and were deposited in a bank account in petitioner's name which could be drawn upon by the *349 Portland agent. The petitioner filed federal capital stock tax returns for the years ended June 30, 1937, 1938, 1939 and 1941. During the years 1937, 1938, 1939 and 1941, the petitioner was engaged in business within the United States. The total amount of deductions allocable to income from sources within the United States was, as stipulated, $151,557.43 for the fiscal year 1937, $115,177.24 for 1938, $100,840.60 for 1939, and $44,998.13 for 1941. Memorandum Opinion STERNHAGEN, Judge: The claim of the taxpayer depends upon whether the evidence shows that in the taxable years in question it was "engaged in trade or business within the United States", and therefore taxable as a resident corporation under Section 231(b), Revenue Act of 1936. If so, there is no need to consider the alternative provision, "having an office or place of business therein." The taxpayer does not contend that its transactions in bonds and shares, from which, as the evidence shows, the larger part of its income in the United States in the years in question was derived, may be considered in determining the applicability *350 of the statute; and clearly it could not make such a contention in view of the restriction of Section 211 (b) that the phrase "'engaged in trade or business within the United States' * * * does not include the effecting of transactions in the United States in stocks, securities, or commodities through a resident broker, commission agent, or custodian." Its contention is predicated entirely on the view that its relation to the pieces of real estate located in the western part of the United States, all of which are owned by it and operated by it through agents or attorneys-in-fact acting under its control and supervision, constitutes the carrying on by it of business. The Commissioner disputes this. He contends that the real estate was all acquired by the taxpayer as an incident of its primary business of lending money on mortgage, which resulted in foreclosure, and that since none of the property was acquired by ordinary purchase, the petitioner was not engaged in business but merely in the liquidation of its investments. The Commissioner also says that the statutory restriction relating to *351 securities is an obstacle to petitioner's claim, because lending money on mortgage and subsequent foreclosure is essentially equivalent to the effecting of transactions in securities. This latter proposition we can dismiss summarily as without merit. We are of opinion that the evidence shows conclusively that, entirely apart from its transactions in stocks and securities, the petitioner was in the taxable years engaged in business in the United States in respect of the operation and management of numerous farms and ranches in Washington, Oregon, Idaho, Oklahoma and Texas. The fact that the income from these operations was very much less than the income from the bonds and shares which it owned does not serve to change the character of the real estate income. It is nevertheless income from carrying on the business which generated it. It is substantial and not merely negligible; but even if the real estate activities resulted in a loss, they might nevertheless be a business. While the consistent holding and operation of many properties at a loss would in a proper case be evidence upon the intent, *352 - business or otherwise - with which the property is held, it would not necessarily show that the intent was other than that of carrying on a business even though unsuccessful. Cf. G.C.M. 18835, 1937-2 C.B. 141. The Commissioner relies heavily upon Evelyn M. L. Neill, 46 B.T.A. 197. But that case held that the mere ownership by an alien nonresident of a building in the United States, with which she had nothing to do but collect the rents which her agent in this country sent her, the management, operation, and maintenance being taken care of entirely by a tenant, was not engaged in business in the United States. It is distinguishable from this case in which the taxpayer exercises the functions of an owner, many of which are carried on through an attorney-in-fact. The decision is on the other hand controlled by Pinchot v. Commissioner, 113 Fed. (2d) 718, in which the Circuit Court of Appeals for the Second Circuit said in language much of which can be applied to the evidence and contentions in this case: Though the stipulation does not show the number or the amount of the transactions of the petitioner in managing these eleven buildings in *353 New York, it is certain that they must have been considerable in both respects as well as continuous and regular. Their maintenance required the care and attention of the owners and the decedent supplied her part of that by means of her agent and attorney in fact. Richards v. Commissioner, 9 Cir., 81 Fed. (2d) 369, 106 A.L.R. 249. What was done was more than the investment and reinvestment of funds in real estate. It was the management of the real estate itself for profit. Whether or not that was engaging in business within the meaning of federal tax statutes is a federal question which cannot be controlled by state decisions. Lyeth v. Hoey, 305 U.S. 188, 59 S. Ct. 155, 83 L. Ed. 119, 119 A.L.R. 410. It necessarily involved alterations and repairs commensurate with the value and number of buildings cared for and such transactions as were necessary constitute a recognized form of business. The management of real estate on such a scale for income producing purposes required regular and continuous activity of the kind which is commonly concerned with the employment of labor; the purchase of materials; the making of contracts; and many other things which come *354 within the definition of business in Flint v. Stone Tracy Co., 220 U.S. 107, 31 S. Ct. 342, 55 L. Ed. 389, Ann. Cas. 1912B, 1312, and within the commonly accepted meaning of that word. We think the Board was right in deciding that this decedent was engaged in business in this country at the time of her death. The determination is reversed, and decision will be entered under Rule 50.