Herbert L. EMANUELSON, Jr., Administrator, d.b.n., c.t.a. Estate of William D. Fitch, Plaintiff,

v.

UNITED STATES, Defendant.

Civ. A. No. 6093.

United States District Court
D. Connecticut,
Civil Division.

Feb. 4, 1958.

Charles J. Parker, Gumbart, Corbin, Tyler & Cooper, New Haven, Conn., for plaintiff.

Simon S. Cohen, U. S. Atty. for District of Connecticut, Hartford, Conn., Harlan Pomeroy, Washington, D. C., for defendant.

ANDERSON, District Judge.

This is a suit brought by the administrator of the estate of William D. Fitch, deceased, against the United States under 28 U.S.C. § 1346 for the refund of income taxes paid by the decedent's estate for the years 1949 and 1950.

William D. Fitch died January 24, 1949. He had executed a will dated December 6, 1948 and prior to that date had executed one on April 19, 1948. The earlier will left 2/3 of the residue to certain charities; the later one left the entire residue to non-charitable legatees. After the decedent's death a controversy arose among the beneficiaries under the

two wills which was ultimately resolved in a written compromise agreement on July 17, 1950. By its terms 52/480 of the residue passed to the charities named in the April 19, 1948, will, The Gaylord Farm Association, The Crippled Children's Aid Society, Inc., Trinity Episcopal Church and Leila Day Nurseries, Inc., and it was specifically stated that the residue "shall include the net income of the estate".

Income was earned by the estate during 1949 and 1950 and after the compromise agreement was made, the charities were paid their fractional share of the residue with its aliquot share of the net income earned by the estate. The administrator is here seeking to recover the income taxes paid by the estate on that share of the net income which went to the four charities. He claims that this income is deductible within the terms of Section 162(a) of the Internal Revenue Code of 1939, 26 U.S.C. § 162(a). That section reads as follows:

"(a) There shall be allowed as a deduction (in lieu of the deduction for charitable, etc., contributions authorized by section 23(o)) any part of the gross income, without limitation, which pursuant to the terms of the will or deed creating the trust, is during the taxable year paid or permanently set aside for the purposes and in the manner specified in section 23(o), or is to be used exclusively for religious, charitable, scientific, literary, or educational purposes, or for the prevention of cruelty to children or animals, or for the establishment, acquisition, maintenance or operation of a public cemetery not operated for profit."

The Government asserts that the income in question is not deductible under this section because, although the residue was *to include* income, the legacies were not made *as* gifts of *income* but rather as gifts of a part of the residue, and whether the four charities get their shares from corpus or part corpus and part income is left to the whimsey of the administrator. But actually the administrator had no such choice. He was compelled by the agreement to pay to the four charities their aliquot share of the estate's income; and, absent a valid agreement to the contrary, the law of the State of Connecticut required him to make this payment of income to them. Stanley v. Stanley, 108 Conn. 100, 111, 142 A. 851.

Neither party disputes that the agreement took the place of the second will which was probated February 28, 1949; but the Government contends that the compromise agreement did not specifically make a bequest of income to the four charities. Its ruling on this case reads in part as follows:

"However, since the settlement agreement merely provides that the residue of the estate 'shall include net income and does not specifically provide for gifts of income to charity, it is held that the charities are pecuniary legatees and any money received by them would not be allowable as a charitable deduction under section 162(a) of the 1939 code because it was not received in satisfaction of a claim for income. Compare Estate of Ralph R. Huesman v. Commissioner, 9 Cir., 1952, 198 F.2d 133.' "

The strictness of the wording of the ruling—"not specifically provided for"—is not justified on the basis of Huesman. As the ruling itself bears out in the last sentence of the explanation, the Huesman case barred the tax refund because the money was not received in "satisfaction of a claim for income". The court in the Huesman case said [198 F.2d 136]:

"We understand the term 'paid pursuant to the terms of the will' in § 162(a) to mean that the charity must be denominated an income beneficiary in the instrument or, it at least must receive a right to be paid income by virtue of the gift made to it."

Here there is no doubt that the charities had a right to income. And from the language of the Huesman case, which

the Government relies on, it matters not whether that right came specifically and exclusively from the compromise agreement, as the ruling seems to demand, or whether that right came by virtue of the compromise agreement as amplified by applicable state law governing the distribution of an estate's income. In the Huesman case the income involved had been earned, not by the estate, but by the decedent during his life-time and there was no applicable state law which gave the charity a pro rata share of it. The court in discussing this point said:

"Under state law it may be that a residuary legatee has a right to income realized from investment of his share of the corpus between the date of death of the testator and the time distribution of the gift is made. But there was no such income available for distribution in the instant case, hence, the fund could have been paid only in satisfaction of the right to corpus."

Since under the terms of the compromise agreement here, the charities received a *right* to a portion of the residue, and since under both the agreement and applicable Connecticut law that right to the residue gave them a right to their pro rata share of the income, the plaintiff has met the test of the Huesman case and the requirement that the income be received by the charities pursuant to the terms of the compromise agreement.

■ The Government further contends that because the income with which this case is concerned is for the years 1949 and 1950 and the compromise agreement was not made until July 17, 1950, the 1949 income could not be affected by it and could not qualify under the statute as "paid or permanently set aside" for charitable purposes "during the taxable year". It claims that such charitable disposition must have been operative at the time the income accrued and that the "paid or permanently set aside" feature

must have been currently applicable. But the compromise agreement relates back to the time of the probate of the will, February 28, 1949. To treat it otherwise would be, in effect, to ignore, in this context, the principle that the compromise agreement takes the place of the will. Middleton v. United States, D.C., 99 F.Supp. 801, 803.

■ Furthermore, the alternative provision of the statute, i.e. "any part of the gross income, without limitation, which pursuant to the terms [of the compromise agreement] * * * is to be used exclusively for * * * charitable * * * purposes * * *" is not conditioned by the phrase "during the taxable year", and no reason has been advanced why the bequest of income to the four charities in the present case should not also qualify for deductibility under this provision of the statute as well.

This construction seems to be in accord with the historical development of the section. Section 162 first appeared in that form as Section 219(b) of the 1924 Revenue Act. Prior to that, the section was not couched in the alternative form. Interpreting this addition, after showing the historical development, the court in the Charles P. Moorman Home for Women v. United States, D.C.1930, 42 F.2d 257, 261, said:

"Section 219(b) of the Revenue Act of 1924 grants the exemption, not only in cases where the income has been paid to or permanently set aside for the charitable purpose during the taxable year, but also in those cases where the income received during the taxable year is to be used exclusively for the charitable purpose."

Judgment will be entered in favor of the plaintiff, but in accordance with the request of the parties the actual entry of judgment is deferred until they have had an opportunity to seek agreement as to the specific amount to be recovered by the plaintiff from the defendant.