Wilbur D. Jones and Mildred A. Jones v. Commissioner.
Jones v. Commissioner
Docket No. 60394.
United States Tax Court
T.C. Memo 1958-191; 1958 Tax Ct. Memo LEXIS 34; 17 T.C.M. (CCH) 952; T.C.M. (RIA) 58191; November 13, 1958
Charles D. Fogle, Esq., First National Bank Building, Marietta, Ohio, for the petitioners. Mark H. Berliant, Esq., for the respondent. TIETJENS
Memorandum Findings of Fact and Opinion TIETJENS, Judge: The Commissioner determined a deficiency in income tax for the year 1952 in the amount of $1,946.32 and an addition to tax under section 294(d), Internal Revenue Code of 1939, of $248.47. The only questions for decision are (1) whether the amount of $6,691.88 received by petitioners *35 from the Estate of Terrie H. Hadley was taxable income under section 22(a), I.R.C. 1939, as determined by the Commissioner, or was excludable under section 22(b)(3), as property acquired by bequest, devise, or inheritance; and (2) whether the addition to tax under section 294(d) was proper. Findings of Fact The petitioners are husband and wife, residing at Marietta, Ohio. They filed a joint income tax return for 1952 with the collector of internal revenue at Columbus, Ohio. In 1935 petitioners became acquainted with Dr. James A. Hadley and his wife Terrie. The petitioners and the Hadleys were neighbors and their relationships were close and friendly. The Hadleys were an elderly couple and Mildred became attentive to many of their needs. She drove them many places in their car, conducted some business affairs for them, administered the small estates of Terrie's brother and sister, as well as Dr. Hadley's estate, cared for them during their last illnesses, and performed other menial tasks over the years. Mildred felt that she was entitled to compensation for these services. Dr. Hadley told her on several occasions that she would "be recompensed for this," and said, "You will be *36 well taken care of." He told Mildred she would be taken care of on his wife's death. Dr. Hadley died in 1947. He left no will. Terrie Hadley died on December 18, 1951. No will was found and Mildred filed an application in the probate court to require a niece of Terrie to produce her will. This application was dismissed. Thereupon Mildred filed, on December 31, 1951, an application with the probate court to admit to probate an unsigned copy of a will alleged to be the last will and testament of Terrie H. Hadley. The alleged will was dated February 5, 1948. One of its provisions bequeathed $5,000 in cash to Mildred. Others bequeathed sums to Mildred as trustee for certain purposes and gave her an interest in the Hadley residence. She was named executrix. In March 1952 Mildred filed a Proof of Claim with Ezra R. Miller, the administrator of Terrie Hadley's estate, claiming compensation for personal services rendered the Hadleys prior to their deaths. On April 15, 1952, this claim was rejected in full by the administrator. Shortly thereafter suit was entered by Mildred in the Common Pleas Court of Washington County, Ohio, seeking from the estate compensation for personal services. *37 The suit specifically sought from the estate a judgment of $16,000, the alleged reasonable value of various services rendered the Hadleys by Mildred at their employment and under the Hadleys' joint and several agreements to pay at the death of the survivor of them. On July 19, 1952, the suit for compensation for services was answered by the administrator and a cross petition was entered asking judgment of $3,400, plus interest, from Mildred, representing indebtedness of Mildred and her husband Wilbur to Terrie Hadley as evidenced by notes in that amount. Following the institution of the suit in the Common Pleas Court for compensation for services, settlement negotiations were entered into by the various parties. Neither the suit to admit a copy of a will to probate, nor the suit for compensation for services was tried; both were marked settled. The record does not show that any will of Terrie Hadley was ever probated. Hayward S. Strecker was employed by the administrator of the Estate of Terrie H. Hadley, to take care of all legal phases of the administration of the estate. Strecker participated in the administrative consideration of the claim for services filed by Mildred with *38 the administrator. After the claim was filed in court Strecker participated in several meetings to settle this claim. The claim was first rejected as excessive. After discussion with the heirs and the administrator it was decided to compromise this claim for compensation for services. Strecker and the administrator negotiated with the attorney representing petitioners at that time, and arrived at a dollar settlement of approximately $6,700. Strecker's only action with regard to the pending suit to admit to probate an alleged copy of a will was the signing of a journal entry to dismiss the case. The dollar amount in settlement finally agreed upon by all parties totaled $6,691.88. In settling, the estate cancelled the indebtedness of $3,400 due Terrie Hadley from petitioners, this amount being represented by signed notes. Further, $791.88 of accrued interest on the notes was cancelled. Accordingly, a net $2,500 cash payment was paid by the estate to petitioners. ($6,691.88 less $3,400 less $791.88). The estate tax return filed for the Estate of Terrie H. Hadley listed the $6,691.88 paid to petitioners on Schedule K. Debts of Decedent, as a debt payable. A formal application for *39 authority to compromise for $6,691.88 the $16,000 claim of Mildred A. Jones based on the reasonable value of services performed, was prepared by the attorney for the estate in behalf of the administrator. This "Application for Authority to Compromise Claim" was filed with the Probate Court, Washington County, Ohio. Respondent determined that the $6,691.88 received by petitioners in 1952, but not included in their 1952 tax return was includible in petitioners' taxable income, as settlement of a suit for compensation for personal services, section 22(a). Respondent, however, determined that $791.88 of the $6,691.88 represented interest paid, and the corresponding deduction for interest paid was allowed. On their income tax return for 1952, petitioners included the following note: "During 1952 Mrs. Wilbur D. Jones received an out-of-court settlement of $6700.00 in an action to establish her rights as a legatee. The amount so received is excluded from gross income of the taxpayer under authority of Section 23(b)(3) of the Internal Revenue Code. (See U.S. Supreme Court decision in case of Lyeth v. Hoey, 21 AFTR 986)." Opinion Petitioners contend *40 that what is involved here is simply a will contest case and that the amount received by petitioners was accepted by them "in settlement of what they would have obtained under the will." They cite Lyeth v. Hoey, 305 U.S. 188 and Magruder v. Segebade (C.A. 4) 94 Fed. (2d) 177. We think disposition of the controversy is not so easy of accomplishment. More than a will contest is involved. Mildred's services and her claimed compensation for those services are inextricably entwined in all the proceedings. She apparently attempted to have the alleged will probated not only because she was a legatee thereunder, but also because if she received the legacy, that, to an extent, would compensate her for the services. The following portion of her testimony throws some light: "BY MR. FOGLE: Q. Was the case to admit the copy ever tried in court? A. No, sir. Q. While that suit was pending in the Probate Court of Washington County, Ohio, you filed a suit in the Common Pleas Court for services? A. That is right. Q. Will you explain to the Court why you did that? A. Well, it was upon your insistence, I think. I know I have been in lawyers' offices long enough *41 to know that that has to be done, that that is the procedure to follow, within the time limit, or you are out. "THE COURT: Even though you are not owed for any services? "THE WITNESS: Sir? "THE COURT: Would you have filed that kind of a suit if you thought you were not owed for services? "THE WITNESS: No, I feel that I was entitled to compensation for services as well as any money that was left to me as legacy, as far as that is concerned. I mean, if I had been left a legacy, I would feel very little to go in and ask for money if I was paid the legacy, but there was no assurance that I was going to be paid the legacy. "THE COURT: Why would that happen? Would that be because you - if you had obtained the legacy, you would have felt that whatever debt the Decedent owed you was thereby settled and taken care of? I mean, I want you to be perfectly frank with the Court. It sounds to me as though you had a claim for services and you were either going to be paid through the legacy or the settlement of this suit for services. "THE WITNESS: The thing started as a friendship, Your Honor. We were close friends, as I related, and during the doctor's life I had done a lot of things *42 for him, little things, and he would always say, 'You are going to be recompensed for this. You will be well taken care of,' and told his wife that I was to receive - in front of me - that I was to receive ten thousand dollars upon her death for all the nice things that I had done for them, just taking them out on Sunday or taking them to church, just because I was a friend and they had no children. That was just their feeling for me. There was a close friendship between the old doctor and myself. "That was one thing. Then, the part that - for the compensation part that I would say came in later when, at the time that Dr. Hadley - just before he died, Mrs. Hadley was ill, and I had taken her to serveral doctors and her case was diagnosed as cancer of the tongue. She was a very old lady and very excitable, and she was afraid if anyone knew about it, that her friends would fail to come to see her at her home, and she asked me never to tell that as long as she lived, that she had cancer. "Consequently, I would get up at 6:00 o'clock in the morning and take her to Columbus while it was still dark so that her neighbors wouldn't know she was going to the doctor's office, or hospital, *43 and I brought her to White Cross Hospital and get her back after dark so they wouldn't know she was being treated for cancer. "I made 21 trips of that kind to Columbus and on two occasions I came and stayed at the hospital a period from seven to ten days with here, went right to the operating room, stayed right there until they brought her out and took care of it. "That was a thing that came into it later as far as compensation. The friendly part, the part that they had promised to give me a legacy because they felt that I was more like a child, that was Dr. Hadley. "THE COURT: Well, he never did make a will, did he? "THE WITNESS: No, he didn't. He said she would give it to me at her death. He felt that she ought to take care of the thing, and he asked me to look after her. On his dying bed, he asked me to look after her." Viewing the entire record we cannot say, as petitioners would have us, that the amount in controversy was received solely and simply in settlement of the litigation over the will. The settlement negotiations involved both the will suit and the claim for compensation. Perhaps the petitioners had the will phase of the transaction more in mind (though this *44 is doubtful), but it is abundantly clear that the representatives of the estate were pointedly concerned with disposing of the claim for compensation. Be that as it may, both law suits were marked settled after a series of negotiations in which both were involved, but the core of the controversy appears to us to have been settlement of the claim for services. This is pointed up by the fact that no settlement negotiations were begun until after the suit for compensation was filed in July of 1952. In the meantime, and though the application to admit the alleged will to probate had been filed in December of 1951, the representatives of the estate had taken no steps to dispose of the controversy. So far as they were concerned the application to probate had no merit and did not pose a serious problem. With reference to the dismissal of the will suit the attorney for the estate, a disinterested witness in the present trial, testified that after the settlement was agreed on, the matter of the suit pending in probate court was brought up. He testified as follows: "Q. When you paid, by surrender of notes and cash to me for the Joneses, you were careful to get both suits dismissed with prejudice, *45 weren't you, as a lawyer should be? "A. As I recall, after we arrived at the settlement and that then the matter was brought up that we had better put our journal entry on. I think it was after that, the time that we arrived at the amount of money we were going to compromise. Then I think it was mentioned about this case that was over in the Probate Court that ought to be disposed of." Further, the manner in which the amount of cash to be paid in the settlement was computed is evidence that in essence it was the suit for services that was being settled rather than the will suit. It will be remembered that in the suit for services a cross petition had been filed by the estate asking judgment on notes owed by petitioners herein with interest to Terrie. The face amount of the notes was $3,400 and interest due was $791.88. As a result of the settlement, $2,500 in cash was paid petitioners by the estate and the difference was taken care of by cancellation of the indebtedness set forth in the cross petition in the compensation suit. On the entire record, we think that the settlement which is here involved was a settlement primarily and essentially of the compensation suit. The litigation *46 over the alleged will was simply incidental thereto and amounted to little more than legal maneuvering. The amount received in the compromise settlement is of the same character as the claim compromised. See White v. Thomas (C.A. 5) 116 Fed. (2d) 147. Since, as we view the transactions, the compromise was of a claim for compensation, the amount received by petitioners was properly included by the Commissioner as income. It was not, as petitioners contend, an amount received in compromise of a will case. Petitioners have presented no facts to show and have not argued on brief that the Commissioner's determination of addition to tax under section 294(d)(2) was in error and on this issue, too, we sustain the Commissioner. Decision will be entered for the respondent.