ESTATE OF Harry E. WRIGHT, Jr.,
Plaintiff-Appellant,

v.

UNITED STATES of America,
Defendant-Appellee.

No. 80–4228.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted Oct. 14, 1981.

Decided May 14, 1982.

* Honorable James M. Fitzgerald, United States District Judge for the District of Alaska, sitting

Michael G. Chatzky, Harry Margolis, P.C., Los Gatos, Cal., for plaintiff-appellant.

Jay W. Miller, Washington, D. C., argued, for defendant-appellee; M. Carr Ferguson, Asst. Atty. Gen., Michael L. Paup, Washington, D. C., on brief.

Before SCHROEDER and FLETCHER, Circuit Judges, and FITZGERALD,* District Judge.

SCHROEDER, Circuit Judge:

When Harry E. Wright, Jr. died, his will directed the residue of his estate to go to charitable or other worthy causes. As

by designation.

the result of a will contest initiated by his sister and eventually settled, however, only 50% of the residual estate was actually distributed to charitable trusts, and the remaining 50% went to the challengers. The issue in this appeal is whether 100% of the income arising from the estate during the period when the will contest was pending is deductible in accordance with appellant's interpretation of the face of the will, or, whether only 50% is deductible in accordance with the actual distribution under the settlement agreement.[1] After disallowance of the deduction, the estate filed a refund suit and, on cross-motions for summary judgment, the district court entered judgment for the government from which the estate appeals.

The statute involved is I.R.C. § 642(c)(2), 26 U.S.C. § 642(c)(2), which provides:

(2) Amounts permanently set aside.—In the case of an estate . . .

. . . .

there shall . . . be allowed as a deduction in computing its taxable income any amount of the gross income, without limitation, which pursuant to the terms of the governing instrument is, during the taxable year, permanently set aside for a [qualified charitable purpose] . . . .

The key question is whether, under this statute, income from an estate can be said to be "permanently set aside" by a will during the period when a will contest is pending and when resolution of the will contest ultimately results in a partial distribution to noncharitable beneficiaries. Appellant's reliance is upon *McClung v. Commissioner*, 13 B.T.A. 335 (1928), which presented similar facts under the predecessor statute to I.R.C. § 642(c). The tax court there held that the estate was entitled to a 100% deduction. It reasoned that the residuary legatee under the will became the absolute owner of the residue as of the date of the testator's death and that, under Tennessee law, the contesting heirs took solely under the compromise agreement, not under the will. Characterization of the funds depended on the language of the will and not the actual disposition after settlement of the will contest. It is significant that the decision was reached by following state law.

The Supreme Court's subsequent decision in *Lyeth v. Hoey*, 305 U.S. 188, 59 S.Ct. 155, 83 L.Ed. 119 (1938), demonstrates an entirely different approach to an analogous situation. *Lyeth* also involved a compromised will contest. The issue there, however, was whether the contesting relative was entitled to treat the funds he received pursuant to the settlement as an exempt "inheritance" under the predecessor of I.R.C. § 102(a), 26 U.S.C. § 102(a).[2] The Court held that he was, and rejected the government's argument that the proceeds awarded the challenger were income under the compromise agreement. In reaching that conclusion the Court held that federal and not state law should apply.

Although *Lyeth* was not decided under the provision of the Code at issue here and does not overrule *McClung*, we find that the reasoning of *Lyeth* is persuasive under the present facts and elect to follow it. The paramount concern, for federal tax purposes, is with the real distribution of the funds rather than their nominal source. This is a concern of nationwide applicability, and the issue should be governed by federal law. Tax benefits should only be recognized for those funds that are actually received by the charitable concern. Applying this analysis to the specific language of § 642, we cannot say that funds are "permanently set aside" if the will is the subject of a compromised will contest.

**1.** The 1970 and 1971 tax returns of the estate reported gross income but no tax liability because all income was claimed as a charitable deduction. In 1974 the estate filed amended 1970 and 1971 returns, claiming a deduction for only 50% of the estate income from that period. A 50% deduction on income was also claimed for 1972. One month later, in June 1974, the estate filed reamended tax returns claiming a charitable deduction for 100% of the estate income for the years 1970, 1971, and 1972. The deductions were not allowed and this refund suit followed. The estate claimed $71,648 plus interest.

**2.** I.R.C. § 102(a), 26 U.S.C. § 102(a), provides: "Gross income does not include the value of property acquired by gift, bequest, devise, or inheritance."

This approach has been applied in a similar factual setting to determine the appropriate charitable deductions for the estate in computing the estate tax. The Third Circuit held that the estate could only deduct a part of the residue because "[t]he amount to be deducted for charitable gifts must be computed on the basis of what the charities actually received, not on the basis of what is provided in the will." *In re Sage's Estate*, 122 F.2d 480, 484 (3d Cir. 1941).

Decisions addressing a similar issue under the statute with which we are concerned here, § 642 (or its predecessor), follow this approach and are fully consistent with the result we reach. *Emanuelson v. United States*, 159 F.Supp. 34 (D.Conn.1958); *Middleton v. United States*, 99 F.Supp. 801 (E.D.Pa.1951). *See also Fidelity Trust Co. v. United States*, 253 F.2d 407 (3d Cir. 1958); *Genesee Merchants Bank & Trust Co. v. United States*, 37 A.F.T.R.2d 747 (E.D.Mich.1976).

We are aware of some criticism of fostering a tax policy which may hamper administration of estates by leaving characterization of their funds "in limbo" during the pendency of a will contest.[3] If a practical problem exists, this case does not illustrate it. The matter has been handled by amendments to the returns and the estate was not prevented from claiming a 100% deduction during the pendency of the will contest. A recent decision of this Circuit lends support for the conclusion that amended returns are appropriate to take into account the effect of a settlement upon a tax return. *Ahmanson Foundation v. United States*, 674 F.2d 761, 771 (9th Cir. 1981).

The estate argues in the alternative that because § 642(c)(1) allows the estate to treat amounts actually paid in the current year as charitable deductions for the previous year, it should be able to deduct on its 1972 return an additional $500,000 actually paid by the estate to the charitable trust in 1973. This argument does not appear to have been presented below and is not properly raised on appeal. *Shedd's Estate v. Commissioner*, 320 F.2d 638 (9th Cir. 1963). Furthermore, Treas.Reg. 1.642(c)–1(b)(1) states that this election cannot be made for any amount that was already deducted for the taxable year in which the amount was paid.

The record does not include the estate's 1973 tax return. Therefore, this Court cannot determine whether the same amount was deducted twice. Because the issue was not raised below and the record is incomplete, we do not consider the issue.

Affirmed.

---

**3.** An example of such criticism is:

> As a matter of logic, [this position] would lead to the result that no charitable deduction could ever be allowed for income accumulated or gains allocated to corpus for years in which any outside force seriously threatened the ultimate charitable use. This would mean that whenever the validity of the will was attacked or whenever there were substantial claims against the estate, no deduction could be claimed, except for amounts actually paid out for charity. Even though the charity's rights were ultimately found to be substantial this would foreclose the deduction, at least in the early period of administration for a great many estates. It is very doubtful Congress intended the deduction to be so restricted.

M. Ferguson, J. Freeland & R. Stephens, *Federal Income Taxation of Estates and Beneficiaries* 358 (1970).