Estate of Lilly B. Howard, Deceased; Albert Austin Bennett, Wade Emmons Bennett and C. A. Adams, as Executors thereof v. Commissioner.
Estate of Howard v. Commissioner
Docket No. 109188.
United States Tax Court
1943 Tax Ct. Memo LEXIS 37; 2 T.C.M. (CCH) 1075; T.C.M. (RIA) 43503; December 9, 1943
*37 Walter G. Danielson, Esq., 433 S. Spring St., Los Angeles, Calif., for the petitioner. Eugene Harpole, Esq., for the respondent. TURNER
Memorandum Findings of Fact and Opinion TURNER, Judge: The respondent determined a deficiency in estate tax against the petitioner in the amount of $37,427.78, and by amended answer alleges that additional items of property belonging to the estate have been discovered and asks that the deficiency be increased. Petitioner in a supplemental petition alleges that there has been an overassessment of estate tax. The only question presented is the propriety and extent of certain deductions claimed by petitioner from the gross estate. Findings of Fact Some of the facts have been stipulated and are found as stipulated. Lilly B. Howard, a resident of Los Angeles, California, died testate on November 9, 1938, at the age of 80 or 82 years, leaving an estate appraised at the amount of $524,251. Under the will Albert Austin Bennett, her brother, Wade Emmons Bennett, her nephew, and C. A. Adams, a business friend, were named and are now the duly appointed, qualified and acting executors of her estate. Within the time provided by law, they filed the Federal *38 estate tax return with the Collector of Internal Revenue at Los Angeles. The estate consisted of the controlling stock in three independent banks, Hollywood State Bank, First National Bank of Pasadena and Broadway State Bank, approximately 14 parcels of improved real estate, cash and securities. It is being probated by the Superior Court of California for the County of Los Angeles. The will, provides, among other things: First, I declare that I am married, that my husband is W. D. Howard, that I have no children, * * * and that my next of kin now living are my brother, Albert Austin Bennett, and the children of my deceased sister, Alberta Hays, said children being Vivian Marquis Howard and Wilma Hays Case. * * * * *
Ninth: * * * and I further direct that any expense incurred by my executors in defending any contest in or about, or in respect to this will, or the provisions thereof, shall be paid from my estate. Vivian Marquis Howard had brought suit against Lilly B. Howard and her husband, W. D. Howard, in the Superior Court of Los Angeles, wherein she sought to recover damages from the defendants for an alleged breach on their part of an agreement to support her and *39 her three children. She alleged in her complaint that the defendants had mutually agreed with her, in June of 1927, that, if in her intended divorce action against E. H. Howard she would forego asking for alimony, support and maintenance, attorneys' fees and court costs and would ask only for a divorce and for the custody of her children, who were 2, 6 and 8 years old, and that if she and her children would come to live in the home of the defendants and she would give the defendants of her comfort, assistance and society, and would look after their home, they, and each of them, would support the plaintiff, who was then 31 years of age, for the balance of her life and would support and educate her children until they became self-supporting, and would see that they wanted for nothing. Vivian Howard procured her divorce in Reno, Nevada, in October 1927, and shortly thereafter she, with her three children, moved into the home of the defendants. She continued to live there until December 1936, when following a quarrel, she was barred from the home. The defendants thereafter refused to carry out their part of the alleged agreement. The case had proceeded to the point where all the evidence *40 was in and the arguments of respective counsel had been made to the jury when Lilly B. Howard died. C. A. Adams, one of those named as executor in her will, was substituted as defendant, under the designation of special administrator. The cause was then submitted to the jury, which rendered a verdict against C. A. Adams, as special administrator, in the amount of $120,800. A motion for a non-suit in favor of the defendant, W. D. Howard, had previously been made, and was granted by the trial court. In rendering the verdict, the $120,800 was awarded by the jury as follows: to the mother, $78,300, and to the minor children, the amounts of $10,000, $15,000 and $17,500, respectively. As a condition for not granting a new trial, the trial court reduced the judgment to $85,727. The case was appealed to the Supreme Court of California by the executors, where the judgment was affirmed on October 1, 1940. The executors then satisfied the judgment by paying $86,977 in cash, in the latter part of 1941 and the early part of 1942. This amount was less by about $19,750 than the amount of the judgment and the accrued interest thereon. A deduction was claimed in the estate tax return for the amount *41 of the reduced judgment, $85,727, but it was entirely disallowed by respondent. Leonard Wilson represented the defendants in the above action. The amount of $750 received by him from the estate was for services rendered to C. A. Adams, special administrator. During the administration of the estate, one Mary Alice Castro asserted herself to be a pretermitted daughter of the decedent, and filed a petition for determination of heirship, claiming one-half of the estate. The executors petitioned the probate court, in accordance with California probate law, for instructions with respect to their duty to investigate, and to defend against, her claims at the expense of the estate, and as a cost of its administration. The petition was contested by Mary Alice Castro and Vivian Howard. The court rendered a decree or an order holding that, in substance, the asserted claim was in violation of the provisions of the will, and that it was a mandatory duty of the executors to defend against the claim; and further, that the cost of such defense would be a cost of administering the estate. The executors engaged an investigator, handwriting expert and associate counsel for the purpose of investigating *42 the birth, family and relationship of Mary Alice Castro. A trial was had with a jury and a verdict rendered that she was the decedent's daughter. A motion for a new trial was filed, and further investigation was made, necessitating trips to Vancouver, British Columbia, and to the State of Washington, where affidavits were procured for the purpose of impeaching the testimony of witnesses who appeared for Mary Alice Castro. Upon hearing of the motion, the trial court granted a new trial. A notice of appeal to the Supreme Court of California was filed by her attorneys. Pending the appeal from the order granting a new trial, a settlement was entered into whereby Mary Alice Castro's claims and interests in the estate were settled for $15,000. The probate court was petitioned for authority to make this settlement. At the hearing thereon counsel for Vivian Howard filed written objections thereto. The probate court made its order approving the settlement and directed the executors to pay the $15,000, which sum was paid by the estate. Petitions were filed for allowance of commissions and fees to the executors and attorneys for services in investigating, defending against and settling her claims, *43 and at the hearings held thereon, after notice as required by the California law, the probate court made allowances for substantial executors' and attorneys' commissions and fees. Lilly B. Howard, at her death, had been living with her husband, W. D. Howard, who was at that time about 60 years old, in the residence at 624 South Mariposa Street, Los Angeles, California. They had been married since 1918. He refused the executors possession of the house, and even access thereto to procure her books, records and personal effects. She had specifically mentioned and devised this property in her will and had described it as her house. The executors filed suit to quiet title to the property. Howard filed a suit for declaratory relief and for a determination of his rights under her will. Judgment having been rendered in his favor, the executors appealed and the judgment was reversed. Howard then filed a suit for an injunction to enjoin the executors from prosecuting their suit. He procured a temporary injunction, and after the trial was had judgment was rendered in favor of the estate, and the temporary injunction dissolved. Suit was then brought by the executors against Howard to quiet title *44 to all assets in the estate. He claimed a one-half interest in and to all of the property on two grounds: (1) that an agreement of joint venture had been entered into between him and his wife which would give him a one-half interest in all her property, and (2) that he had a one-half interest by virtue of it being community property. As the executors could not get into the house or procure any of her personal records, an investigator was engaged to rebuild the financial life of Mrs. Howard from the year 1909, at which time she procured from the estate of her former husband, E. G. "Lucky" Baldwin, about $1,375,000. The purpose of the investigation was to trace the funds which she had obtained from the "Lucky" Baldwin estate, into assets which she had at her death. Numerous trips were made to various points of California. Many photostatic copies of documents, bank records, cashier's checks, and certificates of deposits were procured. It took one month to try the case before the Superior Court of Los Angeles County. The result of the trial was a judgment in favor of the estate, giving Howard only a diamond horse shoe stick pin and certain household furnishings. All other property was *45 found to be the sole and separate property of the decedent. Thereupon petitions were filed for compensation for services rendered in connection with the suit and the court, after a full hearing, made allowances for substantial executors' and attorneys' commissions and fees. The estate sued Howard on three notes found among the decedent's effects and after trial judgment was obtained thereon in favor of the executors. Substantially all of this judgment, approximately $11,000, has been collected. In addition, a contest of the will was filed by Vivian Howard and preparation for the defense thereof was commenced by the executors and their attorney. She had also filed a petition asking for removal of the executors and another for an order fixing their bond at $200,000. All these matters were settled, however, at the same time that her judgment above was satisfied. Litigation was also had with parties by the name of Nolting. By the terms of the decedent's will, said parties were given certain preferential rights to purchase her stock in the Pasadena First National Bank. When a disagreement arose as to their rights under the will, the executors petitioned the probate court for an interpretation *46 and a declaration of their rights and duties. This was contested, and when the court interpreted the will against the Noltings, they took an appeal to the District Court of the State of California. After the briefs had been filed, and on the eve of submitting the question for decision, an agreement for the sale of the stock was entered into with the Noltings which was acceptable to all concerned, whereupon the appeal was dismissed. This sale resulted in a profit to the estate of about $33,000. The executors, with the assistance of their attorneys, made a search for a missing $50,000 which was withdrawn by the decedent in one thousand dollar bills from her savings account, approximately six months before her demise. No trace of the money was found although a thorough investigation was made. They attended directors' meetings of two independent banks in the capacity of director or as representing the controlling stock interest, and consulted with officers of the banks concerning their policies and operations. They also looked after the renting and maintenance of the 13 or 14 parcels of improved real estate. The probate court has allowed executors' commissions in the amount of $30,865, *47 of which $20,000 is not in controversy. The balance of $10,865 is for extraordinary services rendered, including services in connection with the above will contests. The probate court has allowed attorneys' fees in the total amount of $63,130 of which the amount of $34,970 is not in controversy, leaving a balance of $28,160 in dispute. Of the disputed amount, $750 are for services rendered by the attorney for the special administrator in the Vivian Howard suit and $27,410 for extraordinary services rendered, including services in connection with the will contests. A total of $26,888.33 described as administrative litigation expense has been expended for which no deduction was claimed in the estate tax return. Of this amount, the $15,000 settlement of the Mary Alice Castro claim is the only item in controversy. Additional amounts that will be allowed by the probate court for services rendered before the completion of the administration of the estate will be executors' commissions of $12,000, of which $2,000 is the balance allowed by statute, while the remaining $10,000 is for extraordinary services to be rendered; and attorneys' fees, in the amount of $17,210, of which $2,210 is *48 the balance allowed by statute, and $15,000 is for extraordinary services to be rendered. In addition to the above and upon leave from the probate court, an accountant was engaged to set up and keep the books of the estate. For such services, the petitioner in the original return, claimed a deduction of $3,500. The respondent allowed $1,600, the amount that had been paid at that time to the accountant. Since then and prior to the hearing, the accountant had been paid an additional $150. The estate reasonably anticipates that the balance of the $3,500, or the $1,750, will be paid before the administration of the estate has been completed. No account has been filed since June 30, 1941, because the auditor for the estate has been engaged on war contracts out of the city. Since that time no fees for services have been allowed, except as to the Mary Alice Castro matter and the W. D. Howard quiet title suit. In his determination of deficiency, the respondent allowed as deductions only such executors' commissions and attorneys' fees as had been approved and paid at the time of the audit of the return. The California inheritance tax has neither been determined nor paid. The respondent, *49 in determining the deficiency, gave no credit for such tax. Opinion The allowance of deductions from the gross estate in computing the estate tax is controlled by section 303 of the Revenue Act of 1926, as amended by section 805 of the Revenue Act of 1932. [1]
*50 The petitioner contends that all the requirements of the statute are met and that all of the expenditures set forth in our findings above are allowable as deductions. The respondent concedes the deductibility of the statutory commissions and fees allowed by the probate court to executors and attorneys, and does not contest the deductibility of $3,500 allowed as fees to the accountant. He agrees that the estate is entitled to credit for the California inheritance tax when that tax is determined and makes no contention that the estimate of the amounts which will be allowed by the probate court to the executors and attorneys for services that will be rendered in completing administration of the estate are inaccurate. He does contend, however, and for the reasons stated that the following described items do not meet the test of deductibility prescribed by the statute. 1. The sum of $85,727 paid by the estate in satisfaction of the Vivian Howard judgment is unallowable as a deduction. For the reason that the indebtedness was not incurred or contracted bona fide and for an adequate and full consideration in money or money's worth. 2. The expenses incurred in the joint defense of the *51 decedent and her surviving husband in the Vivian Howard case are unallowable as deductions, for the reason that those expenses cannot be segregated as between the two defendants in that suit. 3. The compensation allowed by the probate court to the executors and their attorneys for extraordinary services in defending contests of the will are unallowable as deductions, for the reason that under the law of the State of California the executors of the estate have no interest in the manner of distribution of the assets and are parties indifferent in the will contest. 4. The sum of $15,000 paid to Mary Alice Castro in settlement of her claim that she was an illegitimate pretermitted daughter of the decedent is unallowable as a deduction, for the reason that it partakes of the nature of an inheritance and no statute provides for its deduction. With respect to the $85,727 paid in satisfaction of Vivian Howard's judgment, the facts in our opinion show that the respondent's contention is without merit. In consideration of Vivian Howard's promise to forego a claim for alimony in her divorce action and to bring her children to live in the home of the decedent, to give to the decedent her comfort, *52 assistance and society, and to look after the decedent's home, the decedent promised that she would support Vivian Howard for the balance of her life and that she would support and educate the children of Vivian Howard until they became self-supporting and would see that they wanted for nothing. For nine years Vivian Howard fulfilled her part of the bargain, leaving the home of the decedent after it was barred to her. On such facts, it is in our opinion apparent that the claim of Vivian Howard was contracted bona fide, and for an adequate and full consideration in money or money's worth, and we so hold. In his second contention above, the respondent has assumed that the $750 paid by the estate to Leonard Wilson, who represented the decedent and her husband in the Vivian Howard suit, was compensation for services rendered both defendants. We do not agree with the respondent's contention, for it is clearly stipulated that the compensation so paid the attorney was for services rendered C. A. Adams, the special administrator, and we have so found. The respondent's contention is rejected. In contending that the compensation allowed the executors and their attorneys for extraordinary *53 services rendered in the defense of the decedent's will are not allowable deductions from the gross estate, the respondent relies upon In re Carr's Estate, 175 Cal. 387; 165 P. 958. We do not agree with the respondent's interpretation of that case, especially as applied to the particular facts before us. The court determined that the probate court did not abuse its discretion in holding that the executor was entitled to no extra compensation for work performed by him in connection with the will contest therein considered. The services for which the extra compensation was claimed were merely the filing of an answer and several appearances at continuances of the hearing, after which the contest was withdrawn. There was no holding that executors may not and should not defend the estate in will contests; neither was there any holding that no compensation was to be allowed to executors if substantial services were in fact rendered in such contests. To the contrary, an executor or administrator is required, under section 381 of the California Probate Code, "to plead to the contest within thirty days after service of the citation." *54 In re Riviere's Estate, 8 Cal. App. 773; 98 P. 46, wherein the court was considering the allowability of an attorney's claim for compensation for extraordinary services rendered to an executor in defense of a will contest, the court said: * * * When one executes a will and appoints an executor, there is an implied direction by the testator that such person shall take all steps necessary to carry into effect the intent and object of the testator. The confidence reposed in such executor by the testator would be abused and he would prove recreant to his trust did he not, even in the face of contests, diligently endeavor to establish the will and in all respects to carry out the wishes of the testator. The right to employ counsel depends upon the right to litigate. Estate of Jessup, 80 Cal. 625, 22 P. 260. Having, as we believe, the right to litigate, and for the successful conduct of which the employment of counsel became necessary, the expenses of such counsel were a proper charge against the estate. * * * See also In re Dunton's Estate, 15 Cal. App. 2d 729, 60 P.2d 159. *55 In the matters here the California Probate Court has considered the extraordinary services rendered by both the executors and their attorneys in defending against the contests of the decedent's will, has found that the services justified the allowances shown, and has allowed them. The payments were there held to be proper under California law and they meet the test of the statute here for Federal estate tax purposes. The remaining contention of the respondent has to do with the Castro claim. The respondent takes the position that the $15,000 payment to Mary Alice Castro was in the nature of a distribution to an heir and is not therefore deductible. The petitioner contends that the compromise settlement was not made with Mary Alice Castro as an heir, but was a part of the expenses or costs of administering the estate and that deduction thereof should be allowed. A jury had returned a verdict pronouncing Mary Alice Castro a daughter of the decedent, and, to say the least, the compromise was based upon her claim that she was such a daughter. We think therefore that the payment was in character a distribution from the estate and not the payment of costs or expenses. Compare Lyeth v. Hoey, 305 U.S. 188, 83 L. Ed. 119, 59 S. Ct. 155. *56 The respondent is accordingly sustained in disallowing the deduction of this sum. Decision will be entered under Rule 50. Footnotes
1. Sec. 303. For the purpose of the tax the value of the net estate shall be determined - (a) In the case of a resident, by deducting from the value of the gross estate - (1) Such Amounts - (A) for funeral expenses (B) for administration expenses (C) for claims against the estate (D) for unpaid mortgages upon, or any indebtedness in respect to property where the value of decedent's interest therein, undiminished by such mortgage or indebtedness, is included in the value of the gross estate, and (E) reasonably required and actually expended for the support during the settlement of the estate of those dependent upon the decedent, as are allowed by the laws of the jurisdiction, whether within or without the United States, under which the estate is being administered but not including any income taxes upon income received after the death of the decedent, or property taxes not accrued before his death, or any estate, succession, legacy, or inheritance taxes. The deduction herein allowed in the case of claims against the estate, unpaid mortgages, or any indebtedness shall, when founded upon a promise or agreement, be limited to the extent that they were contracted bona fide and for an adequate and full consideration in money or money's worth. * * *↩