Hugh Coyne and Lucille Coyne, Husband and Wife v. Commissioner. David M. McCrone and Georgina McCrone, Husband and Wife v. Commissioner.
Coyne v. Commissioner
Docket Nos. 38784, 38785.
United States Tax Court
1953 Tax Ct. Memo LEXIS 35; 12 T.C.M. (CCH) 1383; T.C.M. (RIA) 53391; December 7, 1953
Edgar W. Pugh, Esq., 3353 Penobscot Building, Detroit, Mich., for the petitioners in Docket Nos. 38784 and 38785 and David M. McCrone, Jr., Esq., for the petitioners in Docket No. 38785. Peter K. Nevitt, Esq., for the respondent. WITHEY
Memorandum Findings of Fact and Opinion WITHEY, Judge: The Commissioner has determined deficiencies in the income tax of the petitioners as follows: Taxable Year
Tax
Deficiency
Hugh W. and Lucille Coyne
1948
Income
$1,826.52
Hugh W. and Lucille Coyne
1949
Income
1,792.66
David M. McCrone and
1948
Income
$1,837.64
Georgina McCrone
1949
Income
1,814.66
The question for our determination is whether the Commissioner erred in including in the income of the petitioners *36 sums of money received by them in settlement of their claims against the estate of Frederick G. Clayton. Findings of Fact A portion of the facts have been stipulated and are so found. Hugh Coyne (hereinafter referred to as petitioner) and Lucille Coyne are husband and wife, and David M. McCrone (hereinafter referred to as petitioner) and Georgina McCrone are also husband and wife, all of whom are residents of the city of Detroit, Michigan. For each of the taxable years 1948 and 1949 the husband and wives, respectively, filed joint timely Federal income tax returns with the collector of internal revenue at Detroit, Michigan. Frederick G. Clayton was the president of and owned all but 250 of 60,000 shares of the outstanding capital stock of F. G. Clayton & Company, a Michigan corporation doing business as a retail men's clothing store at Detroit. He died testate May 24, 1946. His will was admitted to probate in the Probate Court for Wayne County, Michigan, on March 12, 1947. Petitioners were not named in said will in any capacity. Petitioner Coyne was credit manager of F. G. Clayton & Company (hereinafter referred to as the corporation) from 1926 until subsequent to Clayton's *37 death. He received a regular salary from the corporation for such services. He was also employed by Clayton personally in the management of Clayton's various real estate holdings from 1932 until Clayton's death. He was paid a regular salary for these services. Petitioner McCrone was treasurer and office manager of the corporation from 1931 until subsequent to Clayton's death. For such services he received a regular salary from the corporation. He was also employed by Clayton personally to take care of Clayton's personal books and records from 1931 until Clayton's death. For these services he was paid a regular salary. Each salary check paid to petitioners bore a notation that it was in full payment of salary to date of issuance. On or about November 4, 1946, subsequent to Clayton's death, both petitioners filed separate claims against Clayton's estate with the Probate Court for Wayne County, Michigan, as follows: "DAVID M. McCRONE, files these claims against the estate of Frederick G. Clayton, Deceased, and says: "1. That he is a resident of the City of Detroit, Wayne County, Michigan, and of lawful age, and is an Auditor and Financial Adviser by profession. "2. That on October 1, 1931, he *38 was employed by said decedent, Frederick G. Clayton, individually, to audit certain personal books and records and to assist him in straightening out certain personal financial affairs. That on November 1, 1931, in addition to the personal service for said Frederick G. Clayton recited first above, claimant was employed by F. G. Clayton and Company, a Michigan Corporation, to do its auditing and generally assist in the management and operation of its business, financial and tax matters. That claimant continued serving both Frederick G. Clayton individually and F. G. Clayton and Company in said dual capacities down to and including the date of the death of said Frederick G. Clayton on to wit May 24, 1946. "3. That said F. G. Clayton and Company is a Michigan Corporation, operating a gentlemen's retail clothing store at Michigan Avenue and Shelby Street, Detroit, Michigan, where it has conducted business for many years, and that said Frederick G. Clayton was the President, Director and principal stockholder thereof, owning at the time of his death all but 250 shares of its total issued and outstanding capital stock of 60,000 shares of $10.00 par value common stock. "4. During all *39 of these years, claimant was a close confidant of decedent in relation to his investments and many personal matters, and assisted him in the selection and purchase of all of his stocks, bonds and securities, involving purchases at times in excess of $250,000.00. That during the years of claimant's services as aforesaid to said Frederick G. Clayton, the value of said decedent's estate, as represented by securities, increased in value. That decedent reposed entire confidence in the integrity and ability of claimant to advise him in his financial matters, to assist in the purchase and sale of securities as well as in auditing and tax matters. That said decedent, on many occasions, expressed to others with whom decedent transacted business, his deep appreciation of services claimant was rendering, and had rendered to him, and of his entire dependability upon him in such matters. That said decedent was a bachelor and had no relatives known to claimant with whom he exchanged confidences or to whom he ever disclosed the nature or extent of his wealth, and constantly charged claimant with the utmost secrecy and caution to the end that the extent of his wealth should not be learned by his relatives *40 or others. "5. That in addition to the compensation received by claimant from F. G. Clayton and Company for his auditing services and business counsel, claimant received from said Frederick G. Clayton personally, as compensation for his advisory service on investments and auditing, the sum of $208.33 monthly, and for each quarter-yearly period the additional sum of $250.00. "6. That the compensation for said claimant's services for Frederick G. Clayton individually and the F. G. Clayton Company was far less than paid by other employers in this area for similar service, which facts were well known to decedent, who, on many occasions, acknowledged to claimant and others that this was true, but that in order to induce claimant to remain with him at such compensation, decedent made many declarations from time to time of his intention to make adequate provision for said claimant, by will, telling him that he was getting old and being a bachelor with no close relatives to whom he was attached, that he would make generous and liberal provisions for said claimant in his will and made numerous similar promises from time to time, implying in generality that he contemplated leaving a substantial *41 portion of his estate to claimant and other key employees, and at different times prior to August 18, 1943, made certain promises to claimant, none of which, however, is the basis of this claim. "7. That on August 18, 1943, said decedent was greatly disturbed over the fact that one A. J. Steiner, who had been in his employ for a great many years, had left him, and on that day was coming to see claimant to close out a transaction whereby said decedent was to re-purchase stock in the F. G. Clayton Company then held by said A. J. Steiner. That in discussing Steiner's leaving decedent's employ, claimant stated to decedent that it was extremely difficult to get along with said decedent because of his irascible temper and unwarranted abuse of claimant and other employees, and that he, like Steiner, felt that it would be better if he left decedent's employ. Decedent thereupon implored claimant to remain with him and continue in his employ and then and there promised to claimant that if he would remain with him and the F. G. Clayton Company and continue in the services in which he was then engaged, down to the time of the death of said decedent, that he would by will provide for the payment *42 to him of 'at least $100,000.00.' That this promise by decedent to compensate and provide for payment to claimant of $100,000.00 if he remained in his employ and that of F. G. Clayton and Company until said Frederick G. Clayton's death, was repeated and renewed to claimant on October 10, 1944. That claimant accepted said proposal and remained and continued in the fulfillment of his employment down to the time of said Frederick G. Clayton's death, which continuation of service was carried on in reliance upon the express promise made to claimant as aforesaid, and that claimant has fully performed and carried out all of his promises and obligations made to said decedent in relation to his employment. "8. That after the death of said Frederick G. Clayton, the only will offered for probate on behalf of said deceased was one dated April 11, 1923, and that claimant is informed and believes that said decedent never executed any will containing the provisions in fulfillment of his promise with this claimant. "9. That for several days prior to his death, said Frederick G. Clayton, being of sound and rational mind, had made every reasonable effort personally or through claimant and other *43 employees, to contact his legal counsel for the express purpose of having prepared a new last will and testament, in which were to be set forth by decedent the legacies and provisions for payment to claimant and other key employees of the express promises made to him and to each of them to induce claimant to remain in his employment until said decedent's death. That due to no lack of diligence or express desire on the part of said decedent, but rather to the negligence, delay and dilatory conduct of others, said decedent was prevented from performing his express agreement with claimant for the payment to him by his will of the sum of $100,000.00 and of his promises to other key employees. "10. That by reason of the foregoing facts, said decedent breached his express contract with claimant as set forth above, to claimant's damage in the sum of $100,000.00, with interest thereon to the date of payment. "11. Claimant further says that he was employed by said Frederick G. Clayton, individually, to act as his auditor, tax accountant and financial adviser, and that the monthly compensation paid claimant by said Frederick G. Clayton for such services was $208.33, in addition to which *44 each quarter-yearly period he was paid $250.00. That said Frederick G. Clayton died on May 24, 1946 and that said claimant continued to perform such services from May 1, 1946 to and including May 24, 1946, for which services said estate is indebted to claimant in the sum of $309.64, together with interest to the date of payment. "To the total damage of claimant in the sum of $100,309.64, together with interest to the date of payment thereof and costs of these proceedings, for the recovery of which these claims are filed. * * *
"HUGH W. COYNE, files the following claims against the estate of Frederick G. Clayton, Deceased, and says: "1. That he is a resident of the City of Detroit, Wayne County, Michigan, and is of lawful age. "2. That on September 21, 1926 he was employed by F. G. Clayton and Company, a Michigan Corporation, of Detroit, Michigan, as Credit Manager, and has been employed continuously since said time for said corporation in that capacity. "3. That said deceased, Frederick G. Clayton, was the President, Director and principal stockholder of said corporation and that at the time of his death he owned all but 250 shares of its 60,000 shares of issued and *45 outstanding $10.00 par common stock, and fully controlled the company's policies and activities, which company was engaged in and carried on for many years a gentlemen's retail clothing and furnishing business at its present location at Michigan Avenue and Shelby Street, in Detroit, Michigan. "4. That said Frederick G. Clayton, in addition to operating said retail clothing business, was the owner of several large and valuable parcels of business property located in the Cities of Detroit, Highland Park and Dearborn, Michigan, from which he derived substantial revenue aggregating annually approximately $90,000.00. "5. That in the Spring of 1933, in addition to his duties as Credit Manager of said F. G. Clayton Company, said Frederick G. Clayton individually employed claimant to take over and assume the maintenance, operating, leasing and management of said business properties, for which latter employment claimant was receiving as compensation for the past several years the sum of $154.17 per month, which services, among others, claimant continued down to the death of said Frederick G. Clayton on May 24, 1946, shortly after which death the Detroit Trust Company, a Michigan Corporation, *46 as Special Administrator of the estate of said deceased, took over such responsibilities. That in addition to the foregoing duties and responsibilities, claimant, at decedent's request, performed and did many personal services and things for said decedent in and about the maintenance and operation of his home and his personal necessities and comfort, and decedent, in recent years, made increasing demands upon claimant's time, all beyond his regular business hours, which continued down to the time of his death. "6. That the compensation which said F. G. Clayton Company and Frederick G. Clayton individually paid claimant for such services was far less than other retail clothing stores and by owners of property for property management than was customarily paid for similar services in this area, which facts were well known to said decedent, and who acknowledged on many occasions to claimant and others, that this was true, but in order to induce claimant to remain with him at such compensation, made many declarations from time to time of his intention to deal generously with claimant in the future, reciting among other things, that he was getting very old, was a bachelor with no close *47 relatives to whom he was attached, and that claimant was like a son to him, and that some day he would be a rich man, and that he would make ample provision for him, and on many occasions made numerous promises of a similar nature throughout his years of employment, but that at no time prior to October, 1944, as hereinafter related, did said Frederick G. Clayton ever make any special promise or agreement with claimant for any specific amount of additional compensation other than was currently paid him therefor. "7. That in the fall of 1944, claimant, being dissatisfied with his compensation derived from said employment, and at his business progress, and at decedent's failure to give him any definite agreement as to additional compensation, made inquiry for new employment and soon received an attractive offer from another company at compensation greatly in excess of that received from F. G. Clayton Company and Frederick G. Clayton individually, whereupon he communicated with said Frederick G. Clayton and advised him that he intended terminating his employment with him and accepting the other position. "8. That said Frederick G. Clayton thereupon became greatly disturbed and requested *48 claimant to re-consider carefully and to consult said decedent's lawyer and others before making his final decision. That claimant did discuss this situa-[situation] with many of his own business friends and his personal lawyer, as well as decedent's lawyer, and thereafter concluded to terminate his employment with said F. G. Clayton Company and said Frederick G. Clayton. "9. That on to wit October 10, 1944, claimant advised said Frederick G. Clayton that he had decided to leave his employ for something much more profitable and with greater promise for the future, and that thereupon said decedent told claimant in substance that Messrs. Steiner, Newbauer and Merry, former key employees, had all recently left him and that he was greatly in need of claimant's assistance, as well as other key employees at that time; that he was getting very old and infirm, and that he was greatly indebted to the men who had remained with him through the years and helped him build his fortune; that he had but a few years to live and that he intended carrying out his many promises to claimant and others and then and there promised claimant that if he would remain in his employ and that of the F. G. Clayton *49 Company and continue to carry on the work which he was then doing for said F. G. Clayton and Company and Frederick G. Clayton, individually, until the death of the latter, that he would provide for payment to him by his will of the sum of $100,000.00. That claimant then and there accepted said proposal. "10. That in reliance upon said express promise made to said claimant by said Frederick G. Clayton as aforesaid, said claimant accepted said proposal and abandoned his other business offer and in fulfillment of his obligation thereunder, has and did perform and carry out all of his duties and obligations thereunder down to the time of the death of said Frederick G. Clayton on the 24th day of May, 1946. "11. That after the death of said Frederick G. Clayton, the only will offered for probate in the Wayne County Probate Court was one dated April 11, 1923, and executed prior to claimant's employment with said deceased. "12. That claimant has no knowledge as to whether or not said decedent executed any will subsequent to April 11, 1923, but further alleges that for several days prior to the death of said Frederick G. Clayton he made every effort personally and through claimant and *50 other employees, to contact his legal counsel for the express purpose of having prepared a new last will and testament, in which were to be set forth as expressed by said decedent the legacies and provisions for payment to claimant and other key employees in fulfillment of the express promises made to them and each of them to induce them to remain in his employment until his death. That due to no lack of diligence or express desire on the part of said decedent, but due to the delay, negligence and dilatory conduct of others, decedent was prevented from performing and carrying out his express agreement to provide by will for the payment to claimant of the sum of $100,000.00 and from providing for the performance of his premises to other employees of said Frederick G. Clayton. "13. That by reason of the foregoing facts, said decedent, Frederick G. Clayton, breached his express contract with claimant as set forth above, to claimant's damage of $100,000.00, with interest thereon at the statutory rate to the date of payment. "14. Claimant further says and claims that he was employed by said Frederick G. Clayton individually to manage certain business properties belonging to said decedent. *51 That the monthly compensation paid by said Frederick G. Clayton to claimant for such services was $154.17. "15. That said Frederick G. Clayton died on May 24, 1946, and that claimant performed such services for said claimant for the period from May 1, 1946 to and including May 24, 1946, for which said decedent failed and neglected to pay claimant, by reason of which fact, said decedent's estate is indebted to claimant in the sum of $119.35, in addition to the items set forth above in the preceding claim. "To the total damage of claimant in the sum of $100,119.35, together with statutory interest thereon until the date of payment and costs to be taxed for the collection of which these claims are filed." * * *
After extended negotiations with representatives of the Clayton estate, petitioners settled their claims for $25,000 each. During each of the taxable years ended December 31, 1948 and 1949, each petitioner received the net amount of $8,333.34 in settlement of their claims from the estate of Clayton after payment of attorney fees and expenses. These amounts were not reported as income in their Federal income tax returns filed for the taxable years at issue. However, on *52 each of the returns filed, petitioners indicated that they had received the sum of $8,333.34 as a compromise settlement in a suit for a specific bequest against the estate of Clayton, and that such sum in each instance was exempt from taxation under section 22(b)(3) of the Internal Revenue Code. Opinion This case turns upon the nature of the litigation as a result of which the sums here in controversy were paid to petitioners. The question involved is whether the settlement which the petitioners each received is in lieu of an amount which ordinarily would be taxable to him. Lyeth v. Hoey, 305 U.S. 188; Raytheon Production Corp. v. Commissioner, (C.A. 1, 1944) 144 Fed. (2d) 110, certiorari denied, 323 U.S. 779; Swastika Oil & Gas Co. v. Commissioner, (C.A. 6, 1941) 123 Fed. (2d) 382, certiorari denied, 317 U.S. 639. The petitioners argue that the sums they received in the settlement were in reality in specific performance of a contract on the part of Clayton to make a bequest to each of them in the sum of $100,000, and that the amounts of the settlements are not therefore includible in income *53 under section 22(b)(3) of the Internal Revenue Code. Respondent, on the other hand, contends that such amounts so recovered by petitioners were paid to them on the basis of contracts for their services rendered to Clayton personally and the Clayton corporation, and as such are taxable to them under section 22(a) of the Internal Revenue Code. In resolving the question thus posed it becomes obvious that a material issue involves a preliminary question of whether or not petitioners during Clayton's lifetime received salaries from the corporation and from Clayton personally commensurate with the services then performed by them; whether such compensation compared favorably or unfavorably with the compensation of others rendering like service in the same general area. We are immediately confronted with diametrically opposed evidence, all of which emanates from the petitioners. The claims filed by petitioners in the Clayton estate were sworn to. Each claim contained the statement that the maker thereof had received less salary from the corporation and Clayton personally than was paid for like services performed by others in the same general area, *54 and that each claimant (petitioners in this case) was induced nevertheless to remain in the service of the corporation and Clayton at the same salary on his promise to bequeath to each the sum of $100,000. Each of the petitioners testified at the hearing hereof. Petitioner McCrone under cross-examination testified as follows: "Q. Now, is it not true that he [Clayton] paid you a pretty good salary during that time? "A. Yes, he paid me a good salary during that time. "Q. Did he pay you more than what was usually paid elsewhere? "A. No, I don't suppose more than elsewhere, he paid what I figured was a fair salary. "Q. You didn't figure you could get more by going elsewhere? "A. Well, I didn't even try to go elsewhere, I didn't give the matter any thought of getting more from somebody else." Petitioner Coyne on cross-examination testified as follows: "Q. Now, you were with Milner's before you were with Mr. Clayton? "A. Then Crowley Milner Company. "Q. Yes, you were credit manager, is that right? "A. Division credit manager. "Q. Now, while you were with Mr. Clayton, isn't it true that he paid a pretty good salary? "A. Well, depending on a person's viewpoint on *55 that. "Q. Well, weren't you getting more there than you could have gotten elsewhere? "A. No. "Q. Why did you stay with him then? "A. Opportunity for the future." At the time petitioners' claims were filed in the estate their prime objective was recovery on the basis of those claims. At the time petitioners testified, as above set forth, their prime objective was the avoidance of taxation on sums recovered by them as a result of the same claims. The testimony can not be reconciled with the contents of petitioners' sworn claims filed in the Clayton estate. It appears, therefore, that none of their testimony is worthy of credence. We adopt as proving the facts on this question the claims filed by petitioners in the estate of Clayton. There is no dispute here between the parties relative to the state of the law on the main issue. Petitioners do not argue that if the recoveries made by petitioners were on the basis of a contract to pay for services rendered such recoveries are excludible from income. Their argument is based upon a contrary fact conclusion, i.e., that such recoveries were based upon contracts to make a bequest rather than contracts to pay for services rendered. *56 We conclude that the recoveries here sought to be excluded from income were obtained in settlement of litigation which was premised on contracts to pay petitioners for their services. Decisions will be entered for the respondent.