Estate of Amalia Scatena, Deceased, Bank of America, N.T. & S.A., Executor v. Commissioner.
Estate of Scatena v. Commissioner
Docket No. 2930-62.
United States Tax Court
T.C. Memo 1963-290; 1963 Tax Ct. Memo LEXIS 54; 22 T.C.M. (CCH) 1485; T.C.M. (RIA) 63290; October 24, 1963
*54 A sum of $35,000 received by the surviving husband of the decedent from the decedent's estate in settlement of his claims to share in the estate held allowable as a marital deduction under section 2056 of the Internal Revenue Code of 1954. Charles W. Robertson, for the petitioner. Vernon L. Snow, for the respondent. ARUNDELL
Memorandum Findings of Fact and Opinion ARUNDELL, Judge: The respondent determined a deficiency in estate taxes in the sum of $10,029.96, of which approximately $9,633 is in dispute. The issue to be decided is whether the sum of $35,000 paid to the decedent's husband, Guido Scatena, by the executor of the decedent's estate, pursuant to a settlement of the husband's claims to a share of his wife's estate and his threatened litigation *55 based on such claims, qualifies as a marital deduction pursuant to section 2056 of the Internal Revenue Code of 1954. Findings of Fact The stipulated facts are so found and are made a part of these findings. Additional facts were adduced by oral testimony and documentary evidence. The decedent, Amalia Scatena, died testate on February 24, 1960, in the city and county of San Francisco, State of California. At the time of decedent's death she was a resident of said city, county, and state. Guido Scatena is the decedent's surviving husband and Andrew Scatena is the surviving son of the decedent by a marriage previous to her marriage to Guido Scatena. The decedent and Guido Scatena were married on March 24, 1937. Guido Scatena was born on June 29, 1891. At all times since the latter part of 1949 the decedent and Guido Scatena were residents and domiciled in the State of California. Decedent's will, dated May 3, 1956, was admitted to probate in the Superior Court of the State of California, in and for the city and county of San Francisco, in proceeding number 152657 and letters testamentary were issued by said court on March 28, 1960. Petitioner, *56 Bank of America, N.T. & S.A., is a national trust and savings association with its principal office at 300 Montgomery Street, San Francisco, California, and is the duly appointed, qualified, and acting executor of the estate of the decedent. The decedent left a total gross estate of $924,389.54. Paragraph Fourteenth of the decedent's will set forth a bequest of 1,000 shares of stock of Transamerica Corporation to Bank of America N.T. & S.A., in trust, providing for the income from the trust to to paid to Guido Scatena, surviving husband of the decedent, during his lifetime, and, upon his death, the corpus of said trust to be distributed to certain designated beneficiaries. The only other provision made for said surviving husband in the decedent's will was a bequest of $5,000 in Paragraph Twelfth thereof. In 1960 Guido Scatena had a life expectancy of 10 years and the dividend income of the stocks in the trust set up in Paragraph Fourteenth of the decedent's will, for the benefit of Guido Scatena, was the sum of $1,600 per year. The decedent's will disposed of her property as follows: (a) To Guido Scatena the surviving spouse: (i) A specific bequest of $5,000 in cash. *57 (ii) A life estate to the income from a trust of 1,000 shares of stock in the Transamerica Corporation. (b) To Andrew Scatena the only son of the decedent. (i) A specific bequest of $50,000. (ii) All the real property (a home valued at $44,500). (iii) Any savings accounts. (iv) A life estate to the income of a trust consisting of all assets except 1,000 shares of Transamerica stock in a trust set up for Guido Scatena and various other specific bequests. (c) Various specific bequests of cash and personal belongings to other persons and charities. (d) To Charities Twenty-one years after Andrew Scatena's death, the trust under which Andrew is the income beneficiary is to be paid over to his natural born (blood) issue alive at the time of his death. If none exists, then, in equal shares to the following charities: (a) Shriners Hospital for Crippled Children, San Francisco Unit. (b) Roman Catholic Orphan Asylum of San Francisco. (c) Leland Stanford University. The surviving husband, Guido Scatena, decided that he was entitled to a larger share of his wife's estate than he was to receive under her will and he resolved that he would contest the decedent's will. *58 Prior to April 27, 1960, Guido Scatena retained an attorney by the name of Dellegro, located in San Mateo, California, and the law firm of Brobeck, Phleger & Harrison, located in San Francisco, California, for the purpose of contesting his wife's will and otherwise to represent him regarding his claims against the estate of his deceased wife. Guido Scatena's attorneys filed a petition for a family allowance on May 26, 1960. A meeting was held on June 2, 1960, at the office of Guido Scatena's attorneys in San Francisco, California. Present at that time were Joseph F. Speiler, a vice president of petitioner, Edward A. Hammer, attorney for petitioner, and the attorneys representing Guido Scatena, George Cronin and another member of the firm of Brobeck, Phleger & Harrison. Cronin, speaking for Guido Scatena, took the position that his client could successfully contest the decedent's will and set it aside on the ground of undue influence; that a large part of the decedent's estate was community property and/or of a community property nature; and that they could produce the evidence to establish such contentions at the time of trial, but would not divulge the evidence at that time. *59 A demand for a family allowance of $1,500 a month was also made at said meeting. By letter dated June 9, 1960, Guido Scatena's attorneys advised petitioner that Guido Scatena could successfully contest the will of the decedent and obtain all of the community property and one-half of the separate property in the decedent's estate; obtain an order setting aside for himself one-half of the community property included in the decedent's estate by petition to determine heirship or by objections to a petition for distribution; obtain a family allowance of not less than $1,500 a month; obtain an order setting aside all of the furniture in the home of the decedent; and obtain an order for a probate homestead which would give him a life estate in the decedent's home. It was further indicated in said letter that Guido Scatena would settle all of his claims against the decedent's estate for the sum of $100,000, but that whether or not the suggested figure would include a waiver of his right to a family allowance would have to be left for further negotiation. Andrew Scatena was kept informed of Guido Scatena's claims and threatened litigation and was represented by his own personal attorneys. *60 On or about Sunday, June 12, 1960, Guido Scatena contacted Andrew Scatena and later they arranged to meet that evening. At said meeting between Guido Scatena and Andrew Scatena, Guido Scatena offered to settle all of his claims against the decedent's estate for the sum of $35,000 cash. Guido Scatena's demand for $35,000 cash to settle his claims was what he regarded as the cash value of 1,000 shares of stock put in trust and from which he was to receive the income during his life, which amount he believed was a fair settlement figure and was the amount he needed for his future security. His settlement demand was not based on any consideration of how much income he might receive during his life from the aforesaid trust or what he might get as a family allowance and/or a probate homestead. In order that he could personally negotiate a settlement of his claims, Guido Scatena dismissed his attorneys by a letter dated June 14, 1960. On June 15, 1960, at the offices of petitioner, a meeting was held at which time the following persons were present: Guido Scatena, Andrew Scatena, and his personal attorney, Nathan Burke, Stevens, a trust officer of petitioner, and Hammer as the attorney *61 for the petitioner. At said meeting a written agreement, prepared by Hammer, entitled "Agreement for Compromise and Settlement of Claims Against and Rights in Estate of Amalia Scatena, Deceased," was entered into by and between Guido Scatena and Andrew Scatena. The written agreement entered into by and between Guido Scatena and Andrew Scatena provided that Guido Scatena accept the sum of $35,000, to be paid out of the decedent's estate, in full settlement of any and all claims and rights he had against the decedent's estate, including his right to inherit from his deceased wife under the terms of her will and by the laws of intestate succession. The agreement further provided that the income from the trust which was to be paid to Guido Scatena during his lifetime, under the provisions of the decedent's will, would instead be paid to the residuary trust. It further provided that the agreement had to be approved and agreed to by the residuary beneficiaries named in Paragraph Seventeenth of the decedent's will and by the Probate Court. It was further provided in said agreement that if the aforesaid approvals could not be obtained by June 28, 1960, both parties agreed to having the court *62 grant Guido Scatena a family allowance of $1,000 a month, beginning from the date of decedent's death and to continue until one month after the time for the filing of claims by creditors had expired, and that all sums paid to Guido Scatena for a family allowance would be considered as payments on account of the $35,000 to be paid Guido Scatena in settlement of his claims against the estate. The provisions in the said settlement agreement pertaining to the obtaining of a family allowance for Guido Scatena in the event all of the required approvals of the agreement had not been obtained by June 28, 1960, were suggested by petitioner's attorney, Hammer, for the reason that it would probably take a considerable period of time to obtain the aforesaid approvals, that Guido Scatena was in need of money, and in his opinion it was the only legal basis on which the Probate Court could give its permission for the payment of any money to Guido Scatena at said time. On June 28, 1960, the Probate Court made an order authorizing and directing the executor of the will of the decedent to pay to Guido Scatena the sum of $1,000 a month, beginning as of the 25th day of February 1960 and continuing *63 until further order of the court, but not to continue beyond the 28th day of October 1960. The aforesaid agreement of settlement entered into by and between Guido Scatena and Andrew Scatena, dated June 15, 1960, was approved and agreed to by the necessary residuary beneficiaries, by Shriners Hospital for Crippled Children, San Francisco Unit on August 17, 1960, by the Roman Catholic Orphan Asylum, San Francisco, on August 22, 1960, by the board of trustees of Leland Stanford, Jr., University, on August 22, 1960, and by Andrew Scatena, as guardian ad litem of persons not in being, on September 27, 1960. By order of the Probate Court dated September 23, 1960, the aforesaid settlement agreement was approved and petitioner, as the executor of the decedent's will, was authorized and directed to pay to Guido Scatena the sum of $35,000 in full settlement of his claims against the decedent's estate pursuant to and in accordance with the terms of said settlement agreement, with the specific provision that all sums paid Guido Scatena as family allowance should be credited against said sum of $35,000. The petition filed with the Probate Court to obtain its approval of the settlement agreement *64 was drawn up by the executor's attorney Hammer. All of the allegations and statements set forth in said petition to show that the settlement agreement was for the best interests of the estate and all persons interested therein originated with the attorney Hammer and were not the basis upon which the settlement figure of $35,000 was arrived at but were set forth merely as an explanation to the Probate Court to show why the settlement agreement was reasonable. Pursuant to the aforesaid order of the court approving the settlement agreement, the surviving husband of the decedent, Guido Scatena, received the sum of $35,000 from the decedent's estate in settlement of his claims against said estate. Opinion The question for decision is whether an amount paid to decedent's surviving husband pursuant to a settlement of his claims to a share of his wife's estate is deductible from her gross estate under the provisions of section 2056 of the Internal Revenue Code of 1954 as a marital deduction. The petitioner claims that the settlement was made in recognition of the surviving husband's valid claims to a share of decedent's estate under California law and that the *65 payment in settlement of the claims is an interest in property passing to the surviving husband by inheritance and citing Lyeth v. Hoey, 305 U.S. 188, as authority for its position. The respondent on the other hand takes the position that the surviving husband had no enforceable claims against decedent's estate and suggests that the only logical explanation of what occurred is that the payment represented those claims which the husband was already entitled to, namely, homestead rights, family allowance, trust fund income, etc., all of which were terminable interests within the meaning of the law and, therefore, may not form the basis for a marital deduction. We think the evidence establishes that the contentions of the husband were genuine, that they were made in good faith, and the petitioner recognized their merit and gladly accepted the suggested compromise that was proposed. The husband's attorney claimed they had sufficient evidence to prove the will was invalid by reason of undue influence and that the husband was entitled to a substantial interest in the community property of the estate. The figure of $35,000 was suggested by the husband and no other sum was *66 mentioned. The sum was the value of the 1,000 shares of stock that were put in trust under the terms of decedent's will and was the amount the husband believed he needed for his own security. He did not consider the value of the income from the trust or the amount of a family allowance as a basis for reaching the figure of $35,000. The husband's standing to assert his claims against his wife's estate was his legal relationship to her. The claims were adverse to the interest of the other parties to the settlement agreement and to the decedent's testamentary plan and the settlement of the claims was the result of arm's length negotiations. If the husband was successful in a will contest or in establishing a community property interest in decedent's estate, it would have adversely affected the interest of Andrew Scatena and the charitable institutions in the decedent's estate. Thus, we do not think there is merit in respondent's position that the settlement which was made out of court was not an arm's length one and that the property passing as a result of the settlement should therefore not form the basis for a marital deduction. As we pointed out in the Estate of Gertrude P. Barrett, 22 T.C. 606, 611, *67 the Supreme Court found too formal for substance the distinction between a payment made to an heir pursuant to judgment in a proceeding contesting a will and a payment made in compromise in advance of trial of the claims made in the proceedings. It follows from what we have said that the husband's claims were valid ones made in good faith and settled as a result of arm's length negotiations and are sufficient to qualify as bona fide claims and the basis for a marital deduction. Decision will be entered under Rule 50.