MARY ZAHAROOLIS, SURVIVING WIFE, AND ESTATE OF SOTER G. ZAHAROOLIS, DECEASED, MARY ZAHAROOLIS, ADMINISTRATRIX, Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Zaharoolis v. Commissioner
Docket No. 8628-73.
United States Tax Court
T.C. Memo 1976-76; 1976 Tax Ct. Memo LEXIS 328; 35 T.C.M. (CCH) 338; T.C.M. (RIA) 760076; March 10, 1976, Filed *328 Held, property which petitioner Mary Zaharoolis received from her brother's estate was compensation for services and is therefore taxable under section 61, I.R.C. 1954. Adam Palaza, for the petitioners. Justin S. Holden, for the respondent. WILES
MEMORANDUM FINDINGS OF FACT AND OPINION WILES, Judge: Respondent determined a deficiency in petitioners' income taxes of $10,483.59 for 1969. The Sole issue is whether $36,169.38 which Mary Zaharoolis received from the Estate of Stel Theodoros represented taxable compensation, within the meaning of section 61, [1] for services *329 rendered to Stel Theodoros, or whether it was a nontaxable "gift, bequest, devise, or inheritance," within the meaning of section 102(a). FINDINGS OF FACT Some facts were stipulated and are found accordingly. Mary Zaharoolis (hereinafter petitioner) is a party herein as administratrix of the Estate of Soter G. Zaharoolis and individually as surviving spouse of Soter G. Zaharoolis. Petitioner and her husband lived in North Chelmsford, Massachusetts, when they filed a joint 1969 income tax return at the North Atlantic Service Center, Andover, Massachusetts; petitioner was still living in North Chelmsford when the petition was filed herein. Petitioner's brother, Stel Theodoros (sometimes hereinafter decedent), died on November 4, 1964. His Last Will and Testament, dated February 13, 1963, bequeathed $1,000 to petitioner. The rest of the estate was given to other individuals and entities. Petitioner filed suit against the executors of her brother's estate, one of whom was her nephew, in the District Court of Somerville, Massachusetts. Her "Plaintiff's Declaration" alleged that in 1946 her brother asked her *330 and her family to live with him and asked her individually "to become his housekeeper and perform all sundry labor and tasks necessary to manage and run his household." She further alleged that he promised to "leave his entire estate to her" and that "[in] reliance upon the promise of the late Stel Theodoros * * * the plaintiff * * * agreed to do as requested, and complied with his request." Finally, she alleged that he failed to keep his promise and stated that "the defendants, as Executors of the Estate of Stel Theodoros, owe the plaintiff the fair value of the services performed by her." The district court found for petitioner for a total of $135,853.80. The defendants appealed the judgment of that court to the Middlesex Superior Court. Petitioner and respondent have stipulated that on December 11, 1968, the parties entered into a written compromise agreement, which states in pertinent part as follows: WHEREAS, Mary Zaharoolis commenced legal proceedings against the aforesaid executors of the estate of Stel Theodoros for services rendered the late Stel Theodoros at the Somerville District Court and obtained a judgment in the sum of $135,853.80 which is far in excess of all *331 the assets remaining in the estate, and, WHEREAS, the executors appealed from this judgment and the case was recalled for jury trial at the Superior Court in Cambridge, and, WHEREAS, the parties hereto believe that it will be to the best interests of all concerned to settle this matter by Compromise. IT IS HEREBY AGREED AS FOLLOWS: 1. The first paragraph of said will of Stel Theodoros shall be amended so that the sum to be received by Paul D. Protopappas shall be eight thousand ($8,000.) dollars. 2. The second paragraph of said will shall be amended so that Ann Theodoros, mother of the beneficiary named therein shall be the Trustee of the Trust created hereunder for Stylianos Christopher Theodoros and said paragraph shall be further amended so that the sum of eight thousand ($8,000.) dollars shall be left in said Trust in Lieu of ten thousand ($10,000.) dollars. 3. The third paragraph of said will shall be amended so that George Theodoros, father of the beneficiary named therein shall be the Trustee of the Trust created thereunder for Stylianos Patrikios Theodoros and said second paragraph shall be further amended so that the sum of eight thousand ($8,000.) dollars shall *332 be left in said Trust in lieu of ten thousand ($10,000.) dollars. 4. Paragraphs five, six and eight of said will shall be eliminated. 5. Paragraph seven shall remain without change. 6. Paragraph nine shall be deleted and the following paragraph shall be substituted therefor: I hereby give and bequeath the sum of three thousand ($3,000.) dollars to Mary Zaharoolis, IN TRUST, NEVERTHELESS, for the improvement of the water supply system of Vaho, Laconia, Greece, or for any other village improvement of said Vaho, or for the purpose of rendering medical, educational, social, or other worthwhile services and materials in the area of the Town of Githeon, Laconia, Greece. The Trustee may use the whole or part of the principal for any one or all of the above purposes in her uncontrolled discretion or judgment. If any principal remains three years after the Trustee has qualified, said principal remaining shall be paid over by the Trustee to the Community of Vaho, aforesaid. The Trustee mentioned herein shall be exempt for giving surety or sureties on her official bond or bonds in her capacity as Trustee. 7. Paragraph ten shall be amended so that the name of Mary Zaharoolis shall appear *333 in place of Paul D. Protopappas as co-executor, and in place of the Union Homer W. Bourgeois [This name is written in] All the property remaining in the estate after payment of Federal Estate Taxes, and administration fees and legal expenses, as agreed upon by the Parties, shall be paid over and delivered to the said Mary Zaharoolis hereof * * * One of the parties to the compromise was petitioner's nephew, Paul D. Protopappas, a co-executor. The Middlesex Probate Court approved the agreement on April 7, 1969. The court order stated that the interested parties, including petitioner, had assented to the agreement "compromising and settling controversies which have arisen as to the claim of said Mary Zaharoolis for personal services rendered to said testator and as to the distribution of the assets of said estate." On June 24, 1969, petitioner signed a release of the executors, acknowledging the receipt of various items "individually and in my capacity as legal representative of the Estate of Stel Theodoros." Respondent fixed the sum which petitioner received as compensation from the Estate of Stel Theodoros at $36,169.38. Petitioner did not dispute this amount in her petition. *334 ULTIMATE FINDING OF FACT The $36,169.38 which petitioner received from the Estate of Stel Theodoros was compensation for services rendered to Stel Theodoros. OPINION The issue is whether $36,169.38 [2] which petitioner received from the Estate of Stel Theodoros represented taxable compensation, within the meaning of section 61, for services rendered to Stel Theodoros, or whether it was a nontaxable "gift, bequest, devise, or inheritance," within the meaning of section 102(a). The key to this case is Lyeth v. Hoey,305 U.S. 188 (1938). In that case, taxpayer was an heir of decedent, Mary B. Longyear. He and the other heirs objected when her will was offered for probate on the grounds of lack of testamentary capacity and undue influence. After a hearing, at which a statement was made by the respective parties of their proposed evidence, the probate court granted a motion for the framing of issues for trial by jury. A compromise agreement *335 was then reached between the heirs and other interested parties. Taxpayer received more property under the compromise agreement than he would have under the will had there been no compromise agreement. The question before the Supreme Court was whether the property which taxpayer received in compromise of his claim as an heir was taxable income or a gift, bequest, devise, or inheritance. The Supreme Court stated, at 196, "that if the contest had been fought to a finish and [taxpayer] had succeeded, the property which he would have received would have been exempt under the federal act [the predecessor to section 102(a)]." The reasoning behind this statement is clear. Had taxpayer gone to trial and proved, for example, lack of testamentary capacity, it would have meant that decedent, in effect, died intestate. As a result, the amount taxpayer would have received from the estate would have been based upon his heirship. Such amounts were, and are, exempt from taxation. In Lyeth, taxpayer did not prove lack of testamentary capacity since there was a compromise before trial. But the Supreme Court saw no valid distinction between acquisition by judgment and acquisition by compromise. *336 It concluded that heirship underlay the acquisition by compromise as much as the acquisition by judgment, and that what taxpayer received from the estate came to him because he was an heir. Petitioner attempts to bring her case within the holding of Lyeth by comparing the compromise agreement in her case to that in Lyeth. In Lyeth, of course, taxpayer charged undue influence and lack of testamentary capacity but settled the matter by compromise before trial. Petitioner alleges that in her case there was undue influence and that the compromise agreement was an attempt by the interested parties to modify decedent's will to conform to his wishes as known from prior wills. Apparently the prior wills were signed before decedent was unduly influenced. Unfortunately for petitioner there is no evidence in the compromise agreement that it is based upon the desire of the interested parties to modify decedent's will to conform to his wishes before there was undue influence. Clearly, it is based upon the desire of the parties to settle petitioner's suit for servicesrendered. The amounts petitioner received were in compromise for services rendered and not in compromise of *337 her claim as an heir. Such amounts as petitioner received for services rendered are taxable. Joseph M. Mariani,54 T.C. 135 (1970). The compromise agreement states in pertinent part: WHEREAS, Mary Zaharoolis commenced legal proceedings against the aforesaid executors of the estate of Stel Theodoros for services rendered the late Stel Theodoros at the Somerville District Court and obtained a judgment in the sum of $135,853.80 which is far in excess of all the assets remaining in the estate, and, WHEREAS, the executors appealed from this judgment and the case was recalled for jury trial at the Superior Court in Cambridge, and, WHEREAS, the parties hereto believe that it will be to the best interests of all concerned to settle this matter by Compromise. IT IS HEREBY AGREED AS FOLLOWS: * * * [The provisions of the will are modified] All the property remaining in the estate after payment of Federal Estate Taxes, and administration fees and legal expenses, as agreed upon by the Parties, shall be paid over and delivered to the said Mary Zaharoolis hereof * * * [Emphasis added] What petitioner is, in effect, asking us to do is look beyond the *338 form of the compromise agreement (services rendered) to its alleged substance (desire of parties to execute testator's true wishes). When, however, respondent determines that the form of a taxpayer's transactions reflects the true substance of those transactions, taxpayer must present strong proof to overcome the presumption that respondent's determination is correct. J. Leonard Schmitz,51 T.C. 306 (1968), affd. sub. nom. Throndson v. Commissioner,457 F. 2d 1022 (9th Cir. 1972). Petitioner fails to present us with the strong proof necessary for her to prevail. Her first argument centers upon the amount of the judgment secured for services rendered. According to the compromise agreement, it far exceeded the value of the assets remaining in the estate. Petitioner alleges that had she taken under the judgment for services rendered, she would have received all the remaining assets. Instead she chose to take only a portion. She concludes that because she shared with the other heirs and interested parties, she took under a will compromised to reflect the testator's true intentions and did not take for services rendered. But there is another, and we *339 think more logical, reason for not demanding all of the remaining assets of the estate: the executors had appealed. Considering the hazards of litigation, it was reasonable for petitioner to settle. But we think she settled as a creditor and not upon some theory that she was merely carrying out her brother's true wishes. Petitioner's second argument centers on the order which the Middlesex Probate Court issued. That order stated in part that the interested parties, including petitioner, had assented to the agreement "compromising and settling controversies which have arisen as to the claim of said Mary Zaharoolis for personal services rendered to said testator and as to the distribution of the assets of said estate [emphasis added]." Petitioner argues that a creditor would have no say about the distribution of the assets of an estate; a creditor's only concern would be to see that his debt is satisfied. This argument merits little consideration. The order of the probate court merely approved the contents of the compromise agreement. As we have already stated, the executors appealed, and petitioner settled. Accordingly, the compromise agreement set forth what petitioner relinquished *340 (distributions to other interested parties so that the executors would withdraw their appeal) as well as what petitioner gained as a creditor (the remaining assets of the estate). Petitioner's third argument centers on the release of the executors that she signed. She acknowledged the receipt of certain assets "individually and in my capacity as legal representative of the Estate of Stel Theodoros." Petitioner argues that this strongly supports her contention that distributions made to her were under the compromise will and not in satisfaction or settlement of any judgment. But, as in the case of the order of the probate court, we think the release was based upon the compromise agreement. In that compromise agreement, it is true that petitioner was designated executrix, but there is no conflict between being a creditor and executrix. Indeed, perhaps the best way for petitioner to protect her rights as a creditor was to assure herself that she controlled the assets of the estate as executrix. In the alternative, if we ignore the question of the burden of proof and study petitioner's argument in a vacuum, so to speak, it is hardly credible. Petitioner alleges that the real rationale *341 for the compromise agreement was the desire of the heirs and other interested parties to carry out the testator's true wishes, as opposed to those contained in his will. But one interested party to the agreement was the very nephew who allegedly unduly influenced his uncle, Stel Theodoros, to change his will. Given petitioner's story, it necessarily follows that this nephew had a change of heart and agreed to the compromise because he finally admitted his uncle's true wishes. This strains credulity. We are confident that petitioner's nephew and the others entered the compromise agreement for the very reasons stated in the agreement itself: petitioner won her suit for services rendered, the executors appealed, and the parties felt it would "be to the best interests of all concerned to settle this matter by Compromise." Petitioner sued her brother's estate as a creditor, received judgment as a creditor, and entered the compromise agreement as a creditor. Decision will be entered for the respondent.
Footnotes
1. Statutory references are to the Internal Revenue Code of 1954.↩
2. At trial, petitioner asserted that she did not receive the full $36,169.38, but she made no such allegation in her petition. Accordingly, she has conceded this issue. Rule 34, Tax Court Rules of Practice and Procedure.↩